# 𝔚𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

## COLEMAN *v.* WATERS, *et al.*

Decided May 4, 1878.

1878
Special Term.

1. A judgment entered and rendered as confessed, in pursuance of the law of the State of New Jersey, by virtue of and in pursuance of a warrant of attorney, being valid in the State of New Jersey, by virtue of the laws thereof, is entitled to "full faith and credit" in this State, within the meaning of section 1, of Article 4, of the Constitution of the United States.

2. When a court of equity has properly taken jurisdiction of a cause against an absent defendant, it must proceed to give relief according to the principles of equity.

3. If the absent defendant appear and answer, there may be a personal decree only against him, or there may be both a personal decree and a decree subjecting the attached effects.

4. A decree of the circuit court will not ordinarily be reversed, because it rendered a personal decree against the non-resident debtor, without disposing of the attached effects and determining other questions in the cause at the same time; especially where the court can not see, that the appellant is injured thereby.

Appeal from a decree of the circuit court of Kanawha county, rendered on the 25th day of November, 1876, in a cause in said court then pending, in which William S. Coleman was plaintiff, and James T. Waters and George Waters were defendants, allowed on the petition of said defendants.

Hon. Joseph Smith, judge of the seventh judicial circuit, rendered the decree appealed from,

HAYMOND, JUDGE, furnishes the following statement of the case:

On the 7th day of October, 1872, the plaintiff commenced his suit, on the chancery side of the circuit court of the county of Kanawha, against James T. Waters, George G. Waters, J. Brisben Walker and Isaac N. Smith. The writ of summons was made returnable on the 8th day of October, 1872; the summons was returned, executed in due form on the defendants, Walker and Smith.

On the said 7th day of October, 1872, an affidavit was filed with the clerk of said circuit court, in which it was deposed, that a suit in equity is about to be instituted by William S. Coleman against James T. Waters, George G. Waters and others, in the circuit court of Kanawha county, to recover of said James T. Waters the sum of $10,004.00 and interest from July 23, 1872; also to set aside and annul a deed, made by James T. Waters and wife on the 13th day of August, 1872, wherein they conveyed to George G. Waters a certain tract of land on Cooper's creek and its waters in said county, and to subject the said real estate, and other property of James T. Waters, to sale for the purpose of satisfying, as far as may be, any recovery in such suit; and that also on the 23d day of July, 1872, the said Coleman recovered a judgment in the circuit court of Burlington county, in the State of New Jersey, against the above named James T. Waters for $10,000.00 and $4.00 costs of suit; that said judgment, and interest thereon, remains unpaid, and is due from said Waters to said Coleman; that said Waters, as affiant believes, for the purpose of preventing the collection and enforcement of said judgment, conveyed to George G. Waters a tract of land, thereinbefore described; that by reason of the circumstances connected therewith, the said conveyance is null and void, and the said real estate is still subject to any attachment and decrees against, or debts of, the said James T. Waters, and that he believes, the said William S. Cole-

man is justly entitled to recover of the said James T Waters the aforesaid sum of $10,004.00 and interest. from the 23d day of July, 1872, besides his costs in this suit; and that as he verily believes, the said James T. Waters and George G. Waters are non-residents of this State.

On the said 7th day of October, 1872, and after said affidavit was made and filed, the clerk of said circuit court, at the instance of said Coleman, issued in due and regular form an order of attachment in said cause, in which said affidavit is recited, requiring the sheriff of said county of Kanawha in the name of the State of West Virginia to attach the estate of the defendant, James T. Waters, sufficient to pay the sum of $10,004.00 and interest from July 23, 1872, and the costs of the suit, and make return of his proceeding under such order to the next term of the circuit court of said county of Kanawha.

The sheriff made return upon the order of attachment, that on the 7th day of October, 1872, he levied the same on seven hundred acres of land on Cooper's creek, Kanawha county, West Virginia, it being the same tract of land conveyed by J. T. Waters and wife to George W. Waters by deed dated August 13, 1872, and recorded in recorder's office of Kanawha county. Also an undivided half of one hundred and sixteen acres on Two Mile creek of Elk river and its waters, belonging to Isaac N. Smith and J. T. Waters, as tenants in common: Served October 7, 1872, as to the garnishee, J. Brisben Walker, by delivering to him an office copy, &c.

At October rules, 1872, an order of publication was awarded against the non-resident defendants, James T. Waters and George G. Waters, in the usual form. At May rules, 1873, the plaintiff, by his counsel, filed his bill and exhibits in the cause. The bill is substantially as follows, viz:

"Humbly complaining, your orator William S. Coleman, shows unto your Honor, that on July 23, 1872, in

the circuit court of Burlington county, in the State of New Jersey, he obtained a judgment against James T. Waters, a non-resident of West Virginia, in the sum of $10,000.00 and interest thereon from July 23, 1872, until paid, besides $4.00 costs, all of which will appear by reference to a duly certified copy of such judgment, and the proceedings connected therewith, filed with this bill, marked "A," and prayed to be taken and considered as a part thereof; that such judgment remains due from the said James T. Waters to your orator; that no part thereof has been paid, but the same and every part thereof is unsatisfied and due as aforesaid.

"Your orator further shows, that the said James T. Waters is the owner of several valuable tracts of land in the counties of Kanawha and Clay, in the State of West Virginia; that the said tracts of land are liable for the payment and satisfaction of your orator's aforesaid judgment; and that your orator has caused attachments to be levied thereon, for the purpose of creating a lien in favor of his aforesaid judgment; all of which will appear by reference to the order of attachment issued in this suit.

"Your orator further shows, that the said tracts of land are more fully described as follows:

"*First.* Seven hundred acres of land on Cooper's creek and its waters, in Kanawha county, West Virginia, purchased of Isaiah Welch.

"*Second.* An undivided half interest in one hundred and sixteen acres on Two Mile creek of Elk river, in Kanawha county, West Virginia, owned jointly by the said James T. Waters and Isaiah N. Smith, and which interest was also acquired of Isaiah Welch.

"*Third.* A tract of one hundred acres, or thereabouts, on Porter's creek, in Clay county, West Virginia, also purchased of Isaiah Welch.

"Your orator further shows, that in addition to the real estate, hereinbefore described and belonging to James T. Waters, the said James T. Waters is the owner of a large

claim against J. Brisben Walker, a resident of Kanawha county, West Virginia, part of which is now due and unpaid, and part of which will soon become due. Your orator is not informed of the exact amount of such indebtedness, or of the parts already due and to become due, but from information he believes the amount of such claim to be at least $9,000.00 ; that your orator has designated the above named J. Brisben Walker, on the order of attachment issued in this suit, as a person indebted to and having in his possession effects of, the said James T. Waters ; that a copy of such attachment has been served on the said J. Brisben Walker ; and a lien has thereby been created on such claim and every part thereof in favor of your orator ; all of which will fully appear by reference to the attachment papers in this suit.

" Your orator further shows, that the payment of said last mentioned claim is secured by a trust-deed from the said J. Brisben Walker, of record in the office of the recorder of Kanawha county, West Virginia, as appears by a copy of such trust deed herewith filed, marked "B.," and prayed to be considered as part hereof ; that, if necessary, your orator is entitled to be substituted to all rights, benefits and advantages of the said James T. Waters under and by virtue of said trust deed.

" Further complaining your orator shows, that George G. Waters claims to be the owner of the tract of seven hundred acres of land on Cooper's creek and its waters, hereinbefore described ; that such claim is founded on a conveyance made on the 13th day of August, 1872, by James T. Waters and wife to said George G. Waters, and recorded in the office of the recorder of Kanawha county, West Virginia. Your orator however charges, that the said conveyance is no bar, legal or equitable, to the enforcement of your orator's aforesaid claim upon and against the tract of land therein conveyed, but mantains and avers, that the said conveyance is void and of no effect ; that it was made without any valuable con-

sideration, and for the purpose of preventing and obstructing the enforcement and collection of your orator's aforesaid claim ; that the said conveyance was executed by the said James T. Waters and wife without any knowledge thereof on the part of the said George G. Waters, or, if the said George G. Waters had any knowledge thereof, it was executed with an understanding on his part, that he should be the mere custodian of the title for the benefit and under the direction of the said James T. Waters.

" Your orator is advised, that a court of equity has jurisdiction of the matters and things herein alleged, and can grant the relief, which justice and good conscience, and the facts and circumstances above recited, entitle him to ; he therefore prays, that the above named James T. Waters, George G. Waters, J. Brisben Walker, and Isaac N. Smith be made parties defendants to this bill ; that they be required to answer the same, and each allegation thereof, as fully as if especially interrogated thereon ; that a decree be entered adjudging, that James T. Waters do pay the complainant the aforesaid sum of $10,000.00 and interest and costs aforesaid; that in default of the payment of such sum the real estate hereinbefore described, and any other property or estate, which may be ascertained to belong to said James T. Waters, and which is within the jurisdiction of your honorable court, including the aforesaid claim on J. Brisben Walker, be appropriated, sold or disposed of under decrees in this suit ; and that so much of the proceeds thereof, as may be necessary for that purpose, be applied to the payment and discharge of your orator's aforesaid claim ; that the deed of James T. Waters and wife to George G. Waters, hereinbefore mentioned, be declared void and held for naught ; that the interest of James T. Waters in the tract of one hundred and sixteen acres on Two Mile creek of Elk river be sold as an undivided interest, or, if desired by Isaac N. Smith, the co-tenant of James T. Waters, and found practicable, that the same be divided,

and the share assigned to said Waters sold separately, or, if impracticable to divide the same, that the whole of said tract be sold, and the proceeds divided according to the interests of the respective owners; and that in all things the interest of James T. Waters in any property or interests belonging to him be subjected to the satisfaction and payment of your orator's claim aforesaid; and that such other orders be made and proceedings had and relief granted as your orator's case may require, and equity and good conscience deem proper. Your orator will ever pray, &c."

The foregoing bill is verified by the affidavit of the plaintiff, William S. Coleman, dated October 18, 1872.

Exhibit A., filed in the bill, is as follows, viz:

"*Know all men by these presents*, That I, James T. Waters, of Hemstead, State of New York, am held and firmly bound unto William S. Coleman, of Burlington, New Jersey, in the sum of $10,000.00, lawful money of the United States of America, to be paid to the said William S. Coleman, his certain attorney, executors, administrators or assigns, to which payment, well and truly to be made, I do hereby bind myself, my heirs, executors, and administrators firmly by these presents. Sealed with my seal—dated 10th day of May, in the year of our Lord 1871.

"The condition of this obligation is such, that if the above bounded James T. Waters, his heirs executors, administrators, or any of them, shall and do well and truly pay, or cause to be paid, unto the above named William S. Coleman, his certain attorney, executors, administrators or assigns the just sum of $5,000.00, on the 1st day of January, A. D. 1875, with lawful interest, payable half yearly, provided that if any of the said half yearly payments of interest shall remain unpaid more than thirty days after becoming due, that then the whole principal sum shall become due and payable on demand, without any fraud or further delay, then the

above obligation to be void, or else to be and remain in full force and virtue.

"J. T. WATERS. [Seal].

"Sealed and delivered in the presence of:
E. MORRIS."

"To John C. Ten Eycke, Esq., or any other attorney of any Court of Law in New Jersey or elsewhere :

"This is to authorize you to appear for me in any court of competent jurisdiction, in case of the breach of the condition of the above bond, and confess judgment for the penalty therein contained, as of the last or any subsequent term, with costs of suit and release of errors, and this shall be your sufficient warrant.

"Witness my hand and seal this 10th day of May, A. D. 1872.

"J. T. WATERS. [Seal.]

"Sealed and delivered in the presence of:
"E. MORRIS."

"STATE OF NEW JERSEY,

"Burlington county, ss. :

"William S. Coleman, of full age, being duly sworn saith, that the true consideration of the bond of which the preceding is a copy, and on which judgment is about to be confessed, was and is for part of the consideration moneys for certain lands sold and conveyed by the said William S. Coleman and wife to the said James T. Waters, at his special instance and request; that no part of the principal moneys of said bond has been paid ; that the half-yearly payment of interest, which fell due on said bond on the 10th day of November last past, still remains unpaid, and the half-yearly payment, which fell due on the 10th day of May last past, still remains wholly unpaid, and has so remained for more than thirty days; that there is now due upon said bond from the said James T. Waters to the said William S.

Coleman the sum of $5,279.00; that the debt, for which judgment is confessed, is justly and honestly due and owing to this deponent from the said James T. Waters; and that the judgment is not confessed to answer any fraudulent intent or purpose, or to protect the property of the defendant from his other creditors.

"WILLIAM S. COLEMAN.

"Sworn and subscribed this 28th day of July, A. D. 1872, before me.

"JNO. C. TEN EYCK,
"Sup. Ct. Com'r."

"BURLINGTON COUNTY CIRCUIT COURT,
"Of the term of April, A.D. 1872.

"WILLIAM S. COLEMAN
vs.
JAMES T. WATERS.

*In debt on bond and warrant of attorney.*

"The defendant's appearance to this action is entered, and judgment confessed to the plaintiff for the sum mentioned in the above obligation, by virtue of the warrant of attorney thereunto annexed, and pursuant to the directions of an act, entitled 'An act directing the mode of entering judgment on bonds with warrant of attorney to confess judgments.' Whereupon it is considered, that the said William S. Coleman do recover against the said James T. Waters the sum of $10,000.00 debt, and $4.00 costs of suit.

"Judgment signed and ordered to be entered according to law, this 23d day of July, A. D. 1872.

"JOHN C. TEN EYCK,
"Sup. Ct. Com'r.

"STATE OF NEW JERSEY,

"Burlington County, ss:

"I, William M. Risden, clerk of the circuit court and court of common pleas in and for the aforesaid county of Burlington, do hereby certify, that the foregoing is a true, full and correct copy of judgment obtain-

ed by the said William S. Coleman against the said James T. Waters, as the same appears of record in my office in book G. of judgments, page 524, &c., in the clerk's office of Burlington county, New Jersey.

"In testimony whereof, I have hereunto set my hand and seals of said courts, at Mount Holly, this 9th day of August, A. D. 1872.

"[Seal.]          "W. M. RISDEN, *Clerk*, [Seal.]"

"STATE OF NEW JERSEY,

"*Burlington County ss:*

"I, George S. Woodhull, Presiding Judge of the circuit court and court of common pleas in and for said county, do certify, that William M. Risden, by whom the aforesaid record and certificate were made and given, and who in his own hand writing has thereunto subscribed his name, and has thereto affixed his official seal, was at the time of so doing, and now is, clerk of the aforesaid courts in and for said county, to all whose acts as such, full faith and credit are due and given, and that the said record and certificate are in due form and made by the proper officer.

"In testimony whereof, I have hereunto set my hand this 8th day of August A. D. 1872.

"G. S. WOODHULL."

"STATE OF NEW JERSEY,

"*Burlington County, ss:*

"I, William M. Risden, clerk of the circuit court and court of common pleas in and for said county of Burlington, do hereby certify, that the Hon. George S. Woodhull, Esq., by whom the foregoing certificate was made and given, and who in his own proper handwriting has thereunto subscribed his name, was at the time of so doing, and now is, Judge of the circuit court and Presiding Judge of the court of common pleas in and for the said county, duly commissioned and qualified, to all

whose acts as such, full faith and credit are due and given, as well in court of adjudicature as elsewhere.

"In testimony whereof, I have hereunto set my hand and seals of said courts at Mount Holly, this 9th day of August, A. D. 1872.

"[Seal.]          "W. M. RISDEN, *Clerk*, [Seal.]"

The following is exhibit B, filed with the bill, viz:

"*This deed, made this the 1st day of January, 1871, between J. Brisben Walker, of the first part, James L. Carr and W. E. G. Gillison, of the second part, and James T. Waters, of the third part witnesseth :*

"That the said party of the first part doth grant unto the said parties of the second part all that certain tract or piece of land lying on the southwest side of the Kanawha river, in the county of Kanawha, and State of West Virginia, and containing three hundred and seventy-five acres, be the same more or less, and being the same tract of land conveyed by James T. Waters to said J. Brisben Walker, by deed bearing date the 19th day of November 1870, in trust, nevertheless, to secure to said James T. Waters the payment of four several negotiable notes, bearing even date with these presents, and for the amounts, and payable with interest at six per cent per annum from this date as follows, to-wit: "One note for one thousand dollars ($1,000.00), payable on the 1st day of January, 1872 ; one note for one thousand dollars ($1,000.00), payable on the 1st day of January, 1873; one note for one thousand dollars ($1,000.00), payable on the 1st day of January, 1874 ; and one note for five thousand six hundred dollars ($5,600.00), payable on the 1st day of January, 1875 ; and it is further agreed between the said Walker and the said Waters, that in the event default shall be made in the payments of either of said negotiable notes hereinbefore designated as they become due, that then the said Carr and Gillison, or either of them, shall have power, at the request of said

Waters or his legal representatives, to re-sell said tract of land ; said re-sale to be for cash as to so much of the deferred purchase money as may then be due, and upon a credit of one and two years as to the residue ; said re-sale to be made in other respects subject to the provisions of the Code of West Virginia.

"As witness the following signature and seal.

"J. BRISBEN WALKER." [Seal.]

On the 21st day of June, 1873, the circuit court made and entered this decree in the cause, to-wit : "This cause came on this day to be heard upon the return of service of summons had upon the defendants, J. Brisben Walker and Isaac N. Smith ; upon the order of publication as to the defendants, James T. Waters and George G. Waters, duly published and posted, as required by law ; upon the affidavit for attachment made on the 7th day of October, 1872; upon the attachment issued therein, and return of service of said attachment on J. B. Walker, garnishee ; and upon the return of service of the sheriff made of the levy of said attachment, upon the bill and exhibits filed therewith. And the defendant, James T. Waters, this day appeared by his counsel, and filed his demurrer to said bill, which said demurrer, being argued and considered, is hereby overruled, and the said defendant, James T. Waters, is given until the next term to answer said bill; and the other defendants are required to answer by the next term of this court. And this cause is continued until the next term of this court.

At a circuit court for said county, held on the 21st day of November, 1873, it appears, that " the plaintiff having objected to the filing of the answer of the defendant, J. T. Waters, heretofore tendered, which objection is endorsed in writing on the said answer, the said objection was this day argued and submitted to the court. Upon consideration whereof, the court is of opinion to overrule said objection ; and the same is overruled ac-

37

cordingly; and said answer of J. T. Waters is ordered to be filed; and the plaintiff replies generally thereto.

The answer ot said James T. Waters filed in the cause is as follows, viz:

" The answer of James T. Waters to the bill of complaint of William S. Coleman, complainant, filed in the above named cause. Respondent, James T. Waters, for answer, and answering, says, that complainant did secure in a way to be hereafter named (or rather attempted to secure) a judgment against him, respondent; but respondent denies the justice, validity or virtue of that judgment in this State, but claims, that it is inoperative, and ought to be pronounced by this court null and void—

" 1st. Because it is not a judgment of a court of record; was not rendered in court, but was entered up by a commissioner out of court.

" 2d. Because it was obtained without process of any kind; that it was, in fact, a judgment confessed by an attorney, who was in fact the court entering up the judgment, thus acting as court and counsel on both sides; and for other reasons. And respondent thereupon claims, that even if the judgment was founded upon right and justice (which it was not in any sense) and in other respects good, it cannot be enforced as such here, because it was obtained by means and upon principles, not recognized as good or binding in our courts. Respondent alleges, that this so-called judgment was obtained upon a penal bond for ($10,000.00) ten thousand dollars, conditioned for the payment of five thousand ($5,000.00) dollars, and the judgment was entered up for the whole ten thousand ($10,000.00) dollars without any stipulation, that the same might be discharged by the payment of ($5,000.00) five thousand dollars, with interest, which respondent is advised and insists is a gross and grave irregularity, and smacks strongly of fraud, the more so, as he was wholly and entirely ignorant of all such steps and proceedings.

" Respondent claims, that a court of equity has full power to look into the regularity and validity of such

judgment, for that purpose looking into all the circumstances surrounding, and weighing the evidences of fraud and crafty cunning intent, and insists, that it ought not to enforce the collection of such a harsh, unjust, oppressive and inequitable judgment; that no court of equity will lend its aid to enforce a forfeiture; and respondent calls upon the court to protect him from this severe penalty—to wit: the $10,000.00 judgment and interest.

" Respondent further shows the court, that the very condition of the bond, on which judgment was rendered, contains a forfeiture and penalty (easily discernible by the court); for the $5,000.00 was not by its terms due till January 1, 1875; but this judgment was rendered July 23, 1872, under and by virtue of a provision, that a failure to pay interest would make the principal due at one and the same time.

" Respondent further adds here, that he was perfectly willing and offered to pay the interest, but demanded, as he had a right to do pursuant to the terms of the contract (and which said Coleman admitted in a letter to respondent, which will be produced on the trial) that the time of the falling due of the mortgage should be extended; but this the complainant wholly refused to do. And it is almost needless to say, that had no such agreement been made at the time, the property would never have been bought by him. He now regrets, that this stipulation for such extension of time was not at the moment of bargain and sale reduced to writing; he did mention it to Coleman's broker; but he said it was a useless piece of writing, that that was a matter of course; and respondent confiding in the declarations of Morris, said broker, and his apparent fair show of good faith, did not press the matter further at the time, as it would have seemed to reflect upon complainant as a gentleman. To enforce a judgment of such kind, obtained under such circumstances and bearing such badges of bad faith, is contrary to equity and good conscience, and

will not be enforced by the court. Respondent asks the court to hear and consider the whole matter involved in this controversy, and decide this cause upon its merits and according to equity. He submits, that the court cannot and will not remodel the judgment, so as to relieve it of its inequitable and irregular character, without taking full cognizance of the case, as if falling within its original jurisdiction.

" Respondent says, that he was at one time the owner of a tract of land, on Cooper's creek, Kanawha county West Virginia, and of a moiety of one hundred and sixteen acres of land, on Two Mile creek of Elk; but before the commencement of this suit, he conveyed the Cooper's creek land to George G. Waters, for a good and valuable consideration; and also before the commencement of this suit, for a good and valuable consideration, he, respondent, and Isaac N. Smith, sold the Two Mile creek land to one, ——— Henson, and made a deed to him for the land, which was to be delivered when he paid a certain amount on the land; that this deed and the contract between the parties were delivered to John Slack, Sr., for the benefit of both parties; that said Henson took possession of the land and remains in possession thereof until now. Respondent owns whatever equitable interest he may have under this contract. Respondent, who then lived in Kanawha county, left for New York, and cannot now say, what said Henson has paid; but he knows, that he has paid a portion of the purchase money due thereon. Respondent denies, that there was any fraud in his conveyance to George G. Waters, but insists, that the land was conveyed to said George G. in consideration of moneys advanced to respondent by George G. Waters; that the whole transaction was fair and equitable, and that the allegations of complainant's bill to the contrary are false and unfounded. Respondent says, it is true that he held a note of $5,600.00 (not $5,000.00), bearing interest at seven per cent, of one J. B. Walker, which was used in the transaction between

complainant and himself as a collateral, given to secure the complainant in his purchase money; and he insists, that it was part of the contract, and is a matter of legal intendment, as advised, that this collateral should have been resorted to, and every remedy used to collect it, before complainant had a right, or pretense of right, to resort to his present remedy.

"He further asks, that the original note be produced, and either be filed with these papers, or put in custody of the court, or its officers.

"Respondent further says, that so far from being indebted to complainant, he has been greatly deceived, badly treated and injured by complainant, and insists that the complainant ought not to recover anything against him, but ought to be held in damages.

"The following facts are here set forth by the respondent, which he alleges are strictly true:

"In May, 1871, respondent purchased a piece of property at or near Burlington, New Jersey, for a dwelling. The purchase was made of complainant. The price agreed upon was ($10,000.00) ten thousand dollars. There was a mortgage on the property for $4,000.00 for money due one —— Ballon, which, at the time of the respondent's purchase, was nearly due. Complainant agreed to have this mortgage extended for a long time. Respondent paid down ($1,000.00) one thousand dollars in cash, and was to pay ($5,000.00) five thousand dollars January 1, 1875, and was to provide for the ($4,000.00) four thousand dollars mortgage agreed to be arranged or extended through complainant's agency. As already said, respondent could not have been induced to take the property at these figures, unless the extension of the time of payment of mortgage had been fully agreed upon. The papers were first drawn out without noting or providing this stipulation, because the extension of the time of payment of the mortgage was to be effected, when the deeds passed. The deeds, bonds, &c., were afterwards presented to a Mr. Morris, broker for Coleman, and re-

spondent objected to signing the bond, until (as heretofore and herein stated) this matter was settled, but for the reasons and assurances, before herein set forth, they were signed without such stipulation. Before making the purchase respondent laid great stress upon the healthfulness of the place, and especially wished to be assured, that the locality was not subject to chills, of which he had a great horror. He was assured, that the place was *very healthy;* that there was not the slightest chance of being subject to chills on that charming spot ; and that there had been no chills in that locality for years.

"Respondent will here say, that had he then known the real truth, as it afterwards was disclosed, he would not have bought the place at any price, for he above all things wished to get a healthy place, where he and his family would be contented and well, whatever ulterior advantages or disadvantages might appear ; but respondent soon found out, that he was deceived by relying upon the solemn assurances of good health in that locality made by complainant. A case of chills had occurred in that house but a few months before, a fact, which he alleges, complainant must have known, and did know ; while respondent himself, early in the fall, was attacked by chills and fever, was very sick, suffered much, and finally was compelled to move, and did move, to get rid of them, to a more healthy location. And to show the prevarication and bad faith of complainant, respondent would further state,.that in every house near that place there were cases of the same disease that autumn and fall. Respondent did regain his strength, but away at a distance, in a different locality—his house shut up, causing him much annoyance and great *expense.*

" Shortly after, and during respondent's absence, complainant's bad faith began again to manifest itself ; for he demanded some interest that was due, and failed, refused as before stated, to have the time of payment of mortgage extended. Soon after this a suit was begun to foreclose this first mortgage, contrary to all agree-

1878
Special Term.

Coleman
v.
Waters *et al.*

ment made on the subject, which suit, as respondent believes, avers, and alleges, was begun at the instance and prosecuted under the auspices of complainant. That suit was pressed to a speedy hearing; and the property was sold, before respondent knew there was to be a sale, or even that any decree of foreclosure had been entered, as a part of the fraudulent programme laid out beforehand by complainant. The complainant in this suit purchased that property at the sum of $4,500.00, or less than one-half the money, at which he had sold it to respondent twelve months before—a fact, which proves one of two things, either that means were used in the absence of respondent to force and bring on a sale at an unreasonable time, or under unfair circumstances, to the benefit of complainant, or, which is more probable, that the property was not worth more than that, at the time respondent purchased, which is in part confirmed by the fact, that property generally was on the rise, and there was no monetary crisis in the land—a fact which shows, that the bargain and sale were, so far as complainant is concerned, iniquitous and unjust.

"Respondent is conscious, that his misfortune has to some extent resulted from an unguarded confidence in humanity. Without praising himself he may say, that he has always been inclined to think well rather than ill of his species; he is unwilling even now to abandon his confidence in humanity in a general way, but will say in this instance, that he has been defrauded, the fraud being plainly demonstrated in the exorbitant price, at which the property was purchased and sold—the misrepresentations made at the time; and respondent avers, that the whole arrangement was intended and planned to deceive and entrap him, and did deceive and entrap him; and he further submits, that all the proceedings subsequently taken by complainant were harsh and severe, and intended to be so, in order that the property might be repurchased by complainant, and the after proceedings commenced. Respondent alleges, that he had no notice (as

before stated) of the sale; no opportunity to appear and bid for the property, or to make arrangements to put off the sale, or to prevent the same, or to protect his interests in any way, that might have then occurred to him, if advised thereof, and he believe, and so avers, that matters were so arranged as to keep him in entire ignorance of it, as far as possible.

"Respondent states, that the allegation of complainant, to the effect that nothing had been paid on his judgment, is untrue, but avers, as will be shown upon the trial, that under some sort of process, to respondent unknown, (or without process, as to the house-breaking) his house was broken open, and the property, (consisting mostly of furniture belonging to respondent's wife) was seized and sold during respondent's absence; but as to what amount was realized from said sale, respondent is ignorant, and asks, that complainant be compelled by proper order of your Honor to file proper proof and statement of said sale. Respondent also states, that a large stock of farming implements, machines, harness, tools, stock, crops, &c., purchased from complainant by respondent with the farm, and valued by complainant at the time of purchase at some $800.00, was sold during respondent's absence, and as he believes bought in by complainant at such sale; but respondent is ignorant of the amount realized from such sale, and asks, that your Honor will compel complainant in this case (as well as in that of the furniture) to file proof and statement of such sale.

"And now respondent would further state, that in the house there was no property, except a few dollars' worth, which did not belong to his wife, Caroline Thomas Waters; that some ($600.00) six hundred dollars' worth of the furniture had been given to said Caroline Thomas that same year by her father, Don Alonzo Cushman, and her brother, James Stuart Cushman, and that about ($1,000.00) one thousand dollars' worth more of said furniture, &c., was purchased with money belonging to said Caroline Thomas. Respondent protested against

any sale of the furniture, &c., worth, with the horse in stable, respondent's wife's also, about $1,500.00; but all to no purpose. He now submits to your Honor, that, if contrary to what respondent is advised is equitable, your Honor should order a sale of the property mentioned in the pleadings, then that your Honor, as the proper guardian and supervisor of the interests of married women, will make such proper order, as will place the rights of Caroline Thomas, wife of respondent, fully before the court, and decree, that out of the moneys realized she first be paid the value of her furniture and property illegally seized and sold, as herein stated.

"Respondent continuing, answers, that he has made every reasonable offer to settle this matter and avoid all litigation, but complainant has refused all negotiations proposed. Respondent now seeks at the hands of this court protection against complainant's rapacity, and such redress for the many wrongs suffered as may seem right and proper in the premises. Respondent asks the court to dismiss complainant's bill, and to remand him to the court of original jurisdiction for settlement of these matters, or to such other course as your Honor may think best, or for a perpetual injunction, &c., or that your Honor will so adjust the whole matter, as will bring about justice between all the parties.

"And having thus fully answered, respondent prays to be hence dismissed with costs, &c., &c.

"JAMES T. WATERS."

This answer appears to be verified by the affidavit of James T. Waters.

The defendant, J. Brisben Walker, filed his answer; and the plaintiff replied thereto generally. I deem it unnecessary to state the answer of said Walker for the purposes of this cause, as it is now before us.

Some depositions and exhibits were filed in the cause. And it appears, that on the said 25th day of November,

38

1876, the court rendered and entered this decree in the cause, viz:

" The defendant, James T. Waters, this day tendered an amended answer to complainant's bill, to the filing of which the complainant objected for reasons endorsed in writing on the said answer, and the said answer and the objections thereto being argued and considered, the court doth refuse to permit said amended answer to be filed.

" And thereupon this cause came on this day to be heard on the papers formerly filed, and proceedings formerly had therein, including the record of the case of Elizabeth V. Cox against J. Brisben Walker and others, which was filed as evidence in this cause, and on arguments of counsel. Upon consideration whereof, the court is of opinion, that the complainant is entitled to a decree on the judgment, rendered in the State of New Jersey and filed with the bill, for the actual balance due thereon, and that the allegations of fraud; contained in the defendant's answer, are not sustained by the evidence ; and it appearing from the record of the judgment aforesaid, that the true amount, which the complainant, is entitled to collect by virtue thereof, is $5,279.00, as of the date of July 28, 1872, and $4.00 costs, which is subject to the following credits—that is to say, $250.00, the sum realized on the foreclosure of the Ballon mortgage, mentioned in the testimony, in excess of the amount due on said mortgage ; $400.00, the amount realized from the sale of personal property under execution on the judgment aforesaid ; and $3,150.73, the amount realized by J. Howard Pugh, assignee of the complainant in this cause, on the collateral security described in the aforesaid case of Elizabeth V. Cox against J. Brisben Walker and others, which credits are to be made as of the following dates—that is to say : the credits of $250.00 and $400.00 as of the 28th of July, 1872 ; and the credit of $3,150.73 as of May 9, 1876, leaving an actual balance due on the judgment aforesaid as of this date of $2,626.20, It is therefore adjudged, ordered and decreed,

that the complainant recover against the defendant, James T. Waters, the aforesaid sum of $2,627.20, with legal interest thereon from the 22d day of November, 1876, until paid, besides his costs herein expended, including $30.00 as allowed by law."

From this decree the defendants, James T. Waters and George Waters, applied for and obtained an appeal to this court without *supersedeas*. And thus said decree is before us for consideration and review.

*Smith & Knight,* for appellant, James T. Waters:

The case ought not to have been heard in the absence of record evidence showing payments, which it was in the power of the plaintiff to produce, and he did not produce.

A judgment of another State is not so sacred, as to prevent a court of equity from examining into its character, as deduced from the record.

Consequently, if it appears to be a judgment for a penalty, and the bill claims the penalty, a demurrer to the bill ought to be sustained, and the bill dismissed.

If it appears on its face to be enforcing a forfeiture, by which the principal is made to fall due on failure to pay interest, the same result follows.

If it appears on its face to have been obtained without authority, or contrary to authority given, or without proof of authority, a court of equity will not enforce it. This position is the stronger, if it appears also from the face of the record, that there was no jurisdiction of the person.

The judgment must be enforced as rendered. It can not be revised as to some equities, and revision barred as to others.

And the whole case being submitted, all the questions arising in the case ought to be decided.

5 Munf. 495 ; Rob. New Prac. vol. 1, ch. 45, 46 ; Id. pp. 219, 220 ; 9 Johns. 80 ; Rob. Prac. vol. 7, p. 111 n. 493 ; 6 Leigh 575 ; 2 Rob. 305.

*William H. Hogeman,* for appellee, relied on the following authorities:

Nixon's Dig. Laws N. J. (3d Ed.) pp. 76-78; 22 Wall. 77; 9 Leigh 12; 2 Leigh 172: 5 Wall. 291; 6 Ohio 43; 13 Pet. 312; 9 Mass. 462; 26 N. Y. 146; 17 Mass. 515, 546; 1 Ill. 258; 2 Blackf. (Ind.) 384; 15 Me. 167; 2 N. J. L. 399; 13 N. J. L. 68; 18 Md. 502; 8 Johns. 173; 21 Mo. 557; 12 Wis. 692; 24 N. J. L. 818; 7 N. J. L. 153; 11 Ill. 622; 2 Green (Iowa) 492; 6 N. J. L. 300.

HAYMOND, JUDGE, delivered the opinion of the Court:

It appears, that it was agreed by counsel for plaintiff and defendants, that either party may consider, as part of the evidence, any part of the papers and any decree or order in the chancery cause of E. V. Cox *v.* W. E. G. Gillison, trustee, and others, to have such weight, as if properly produced. It further appears, that on the 25th day of November, 1876, the defendant, James T. Waters, tendered an amended answer to plaintiff's bill, to the filing of which the plaintiff objected for reasons endorsed in writing on the said answer; and the court refused to permit the said amended answer to be filed. I deem it unnecessary to state here the said rejected amended answer, as the action of the court in rejecting the amended answer is not assigned as error, or claimed before us to be error; and I see no error in the court in refusing to allow the amended answer to be filed, at the time it was tendered, under the circumstances.

It now remains to be determined, whether the circuit court erred in its decree, appealed from, to the prejudice of the appellants, so as to authorize or require this Court to reverse the same.

The judgment, in the bill mentioned, is a judgment rendered in another State; and it appears to be a judgment confessed by authority of a warrant of attorney

executed by the defendant, James T. Waters. The bond, on which the judgment was confessed, is a bond in a penalty of $10,000.00 subject to the condition therein expressed. By the law of New Jersey it is provided as follows:

"1. In all cases where a bond or obligation is given for the payment of money only, together with a warrant under hand and seal directed to any attorney at law, or other person, to appear in any court of record to an action, brought, or to be brought, on such bond or obligation against the person or persons executing the same, and to confess a judgment against him, her or them, for the sum mentioned in such bond and warrant of attorney with costs of suit, or to the like effect, it shall and may be lawful for the obligee or obligees, his or their heirs, executors, administrators, or assigns, at any time after the day of payment mentioned in said bond or obligation, to apply to any of the justices of the Supreme Court, or to any of the judges of the circuit court or court of common pleas, in any of the counties of this State; and on the production of such bond or obligation with the warrant of attorney, it shall be the duty of such justice or judge, at the request of the person applying as aforesaid, at the end of a fair copy of such bond or obligation and warrant of attorney, to enter, or cause to be entered, an appearance for the obligor, or obligors, to an action of debt, as of the last precedent term of the court, of which the said justice or judge is a member, and a confession and judgment against him, her or them, for the sum mentioned in said bond or obligation and warrant of attorney, signed by the said justice or judge in the following form, to-wit: Supreme Court (or circuit court or court of common pleas, as the case may be) of the term of ———.

> A. B.
> v.      } *In debt on bond by warrant of attorney.*
> C. D.

The defendant's appearance to this action is entered,

and judgment confessed to the plaintiff for the sum mentioned in the above obligation, by virtue of the warrant of attorney thereunto annexed, and pursuant to the directions of an act entitled, 'An act directing the mode of entering judgments on bonds with warrants of attorney to confess judgments,' whereupon it is considered, that the said A. B. do recover against the said C. D., the sum of —— debt, and four dollars, costs of suit. Judgment signed this —— day of ——. E. F.

"2. The copy of the bond and warrant of attorney to confess judgment, with the entry of the judgment thereon, as before directed, signed by the justice or judge shall be delivered to the clerk of the court, in which such judgment is to be entered; and the clerk shall immediately file the same in his office, mark thereon the filing of the same, and enter the judgment in the minutes of the court, and shall enter also the proceedings, on which said judgment shall be founded, as aforesaid, and the judgment as aforesaid, and the judgment itself at large in the judgment book of said court, and index the same as in other cases of judgment.

" 3. All judgments, entered as before directed, shall be as good and sufficient in law, to all intents and purposes whatsoever, as judgments entered by confession in the manner heretofore practiced; and no such judgment shall be reversed for error or misprision of the clerk in entering the same, or defect of form in the entry thereof; and execution shall issue thereon, as in cases of judgments entered by confession, in the manner heretofore practiced.

" 4. All judgments on bonds or obligations for the payment of money only, in virtue of a warrant of attorney to confess judgments thereon, shall be entered as in and by the first and second sections of this act is directed, and not otherwise.

" 5. No judgment shall be entered in any court of record in this State, on a warrant of attorney to confess such judgment, or by the defendant appearing in person

in open court and confessing the same, unless the plaintiff or his attorney shall produce, at the time of confessing such judgment, to the county judge or justice, before whom the judgment shall be confessed, an affidavit of the plaintiff, his attorney or agent, of the true consideration of the bill, bond, deed, note or other instrument of writing or demand, for which the said judgment shall be confessed; which affidavit shall further set forth, that the debt or demand, for which the judgment is confessed, is justly and honestly due and owing to the person, or persons, to whom the judgment is confessed, and that the said judgment is not confessed to answer any fraudulent intent or purpose, or to protect the property of the defendant from his other creditors.

" 6. The affidavit required by this act, may be made before any Justice of the Supreme Court, judge of any circuit court or court of common pleas, commissioner for taking affidavits, or justice of the peace of this State, or if the plaintiff be out of this State, before any court of judicature or notary public of the state, kingdom or nation, in which the said plaintiff resides, or shall happen to be; which affidavit, together with a copy of the bill, bond, deed, note, contract, instrument of writing, account or particulars of the demand, on or for which the judgment is confessed, shall be filed with the other papers in the cause."

This legislation seems to be a part of the revision of the laws of New Jersey, and was approved April 15, 1846. (R. S. 944.) See Nixon's Digest of the Laws of the State of New Jersey, pp. 76, 77.

An act, supplementary to the foregoing act, seems to have been enacted by the legislature of said State, which was approved on the first of March, 1849. This supplementary act provides in the first section thereof as follows, viz:

" 1. Hereafter it shall be lawful for the commissioners to take special bail, and to administer oaths and affirmations, appointed, or hereafter to be appointed, by the

justices of the Supreme Court, and commissioned under the act entitled ' An act authorizing the justices of the Supreme Court to appoint commissioners to take special bail and to administer oaths and affirmations,' to sign, and order entered, judgments by confession upon special warrant of attorney, in any court, wherein such judgments may now be entered; and such judgments so signed, and ordered entered, shall have the same force and validity, as the same would have, if signed by a judge of such court, as heretofore." Same Digest p. 78.

It was held by the Supreme Court of the State of New Jersey, that "the warrant to confess judgment on a bond may be made at a different time from the bond, and to a different person. It is not necessary, that it should be directed to any particular attorney;" and also that "it is not necessary, that it should appear upon the record, that the bond and warrant of attorney were produced before the judge at the time of entering the judgment." *Burrough's* v. *Condit*, 1 Halst. (N. J.) 365. It was also held in the same case, that it is sufficient if the warrant of attorney is directed generally to any citizen of New Jersey. It was held by the same court in the same State, that judgment may be entered by confession on the day of its date upon a bond payable on demand. Nix. Digest 78 ; 2 Halst. (N. J.) 348, case of *Eagle* v *Emley*..

The warrant of attorney in the case before us seems to have been made by James T. Waters one year after the execution of the bond, to which it relates. It is dated on the day the second instalment of interest, mentioned in the condition of the bond, became due; and it authorizes John C. Ten Eyck, the attorney to whom it is directed, in case of breach of the condition of the bond, to appear for him, J. T. Waters, in any court of competent jurisdiction, and confess judgment for the penalty therein mentioned, as of the last or any subsequent term, with costs of suit and release of errors.

The defendant, J. T. Waters, does not deny the exe-

1878.
Special Term.

Colenian
v.
Waters et al.

cution of said warrant of attorney in his answer. He fails to put that question in issue, as he should have done, if he desired to rely upon that fact. *Wilson et al.* v. *The Bank of Mount Pleasant*, 6 Leigh 370. It must, as the case stands, be considered, that the power of attorney was executed by the defendant, James T. Waters, at the day of its date.

The affidavit of William S. Coleman, the plaintiff, appears to be in due form, and is dated the 28th day of July, 1872, as appears not only by the printed record in the cause, but also by the manuscript record of the proceedings in the cause, which has been brought to this court, and is on file.

The judgment appears to be in due form substantially according to the provisions of the law of New Jersey, which I have quoted above; and I regard the judgment, under the New Jersey legislation, as in fact being a judgment for the $10,000.00, the penalty of the bond, which may be discharged by the payment of the amount stated in the affidavit.

The warrant of attorney authorizes the attorney to confess judgment for the penalty of the bond, in case of a breach of the condition. The judgment was therefore confessed in accordance with the warrant of attorney.

At the time the warrant of attorney was executed no breach of the condition could have been comtemplated by the defendant, James T. Waters, except the failure to pay the interest stipulated in the condition of the bond, the first instalment of which was past due, and the second instalment whereof was due on the day of the date of the warrant of attorney.

It is not pretended by the defendant, Waters, in his answer, that either the first or second instalment of the interest was paid, when due, or at any time prior to the confession of the judgment, which was on the 23d day of July, 1872. But it is argued by the counsel of the defendant, that the court should have refused to enforce said judgment; first, because the defendant, James T.

Waters, never was notified in the cause, in which the judgment was confessed, and had no notice of any such proceeding; and second, because the judgment was for a penalty; and a court of equity in this State should refuse to enforce it.

It seems to me, upon principle and authority, that the first proposition is untenable. In the case of *Randolph et al.* v. *Kisler*, 21 Mo. 557, it was held by the Supreme Court of Missouri, that " Where, in suit on a judgment of a court of the State of New Jersey, it appears from a transcript of such judgment, that the same was entered and rendered, as confessed, in pursuance of the law of the State of New Jersey, by virtue of and in pursuance of a warrant of attorney, dated Easton, Penn., empowering any attorney of any court of record in the United States, to confess judgment against the defendant and in favor of the plaintiffs, such judgment being valid in the State of New Jersey by virtue of the laws thereof, is entitled to 'full faith and credit' within the meaning of section one, of article four, of the Constitution of the United States; and that too, although it does not appear, that either the plaintiffs or the defendant, were at the date of said judgment citizens of the State of New Jersey, or had ever been within the said State."

The contract and subject of it in this case seem to have been in the State of New Jersey; the plaintiff resides in the State of New Jersey, and I think it is fair to infer, that the warrant of attorney was made in New Jersey; but whether it was or not, it seems to me is wholly immaterial according to said Missouri decision. I confess, I am unable to say, if C. resides in New Jersey, and W. makes a contract with him there for the payment of money, why W. if he resides in New York, may not make a warrant of attorney, authorizing judgment to be confessed against him in the State of New Jersey, or in any other State. The Missouri case cited seems to decide the question directly.

The record of the proceedings in the State of New

Jersey is certified fully, in accordance with the act of Congress in such cases made and provided, both by the clerk of the circuit court and court of common pleas of the county of Burlington, New Jersey, and the judge of said court.

In the case of *Mills* v. *Durgee*, 7 Cranch 481, the question was, whether the plea of *nil debet* was a good plea to an action of debt, brought in the District of Columbia on a judgment, rendered in New York. It appeared, that the defendant was arrested, and gave bail, and so had full notice of the suit. There was no doubt, that in a court of New York, the record of the judgment would have been conclusive upon the parties. The Supreme Court considering that the judgment had the same effect, when an action was brought on it in another State, *held* the plea to be bad. The same question was presented in *Hampton* v. *McConnel*, 3 Wheat. 234, and decided the same way.

Numerous decisions of State courts, holding a judgment fairly and regularly obtained in another State, as full and conclusive evidence of the matter adjudicated, have been made by numerous State courts. *Evans* v. *Totem*, 9 Serg. & R. 259; *Benton* v. *Burgot*, 10 Serg. & R. 240; *Kean* v. *Rice*, 12 Serg. & R. 203; *Baxley* v. *Lynch*, 4 Harr. (N. J.) 241; *Wemnag* v. *Pawling*, 5 Gill & J. (Md.) 507; *Clark's adm'r* v. *Day*, 2 Leigh 172; *Kemp* v. *Mendell, &c.*, 9 Leigh 12; *Rogers* v. *Coleman*, Hard. (Ky.) 413; Litt. (Ky.) 273, 417; *Williams* v. *Purton*, 3 Mar. J. J. (Ky.) 604; *Fletcher, &c.* v. *Ferrell*, 9 Dana (Ky.) 377; *Andrews* v. *Montgomery*, 19 Johns. (N. Y.) 165; see Robinson's (new) Practice, vol. 1, chs. 45 and 46 and authorities there cited.

The proceedings and judgment in New Jersey in the case at bar were, and are, unquestionably valid in the State of New Jersey under the legislation of that State, unless there be some defect therein not yet considered.

But it is maintained by appellants, that the judgment is void because the person, to whom the warrant of at-

torney is directed, and the Supreme Court commissioner, before whom the confession of judgment was had, are one and the same person, and that the attorney could not confess judgment to himself as commissioner. However this may be in law, there is no evidence appearing by the record, that the commissioner and attorney, to whom the warrant of attorney is directed, are one and the same person; and I do not feel authorized in the absence of proof to presume, that the attorney and commissioner were, or are, one and the same person, from the fact, that they were, or are, of the same name, in order to set aside, what purports to be a solemn judgment of a court of competent jurisdiction of a sister state.    In the absence of proof to the contrary, if any presumption can, or should, be drawn, it must be in favor of the judgment, and that the attorney and commissioner were not, and are not, one and the same person.

A different rule may exist in many other cases, and may properly.    In the case of *Birchwell* v. *Field, &c.*, 8 Paige (N. Y.) Ch. 445, it was held substantially, that it would not be giving full faith and credit to the record of a judgment in a sister state, which record was fully authenticated in the manner prescribed by the law of the United States, if the party, against whom that judgment purported to have been obtained, was permitted to allege and show in the courts of another state, that no such judgment was in part given, or authorized to be entered by the court; but that the judgment record was made up and filed fraudulently by the clerk of the court without authority.    And the Chancellor expressed the opinion, that if the judgment was fraudulently entered by the clerk, without the authority of the court, whose judgment it purports to be, the proper remedy of the complainant is to apply to that court to set aside the judgment, and to take the spurious record off its files.

In *Thomas* v. *Robinson*, 3 Wend. 267, it was held substantially, that in an action in one State on a judgment rendered in another by a justice of the peace, more is

required to be shown, than when an action is on a judgment of a court of record. The statute conferring the the authority, under which the justice proceeded, must be produced. If that shows the subject matter of the justice's judgment to have been within his jurisdiction, and his proceedings appear to have been in conformity with the statute, then full faith and credit will be given to that judgment in the state, wherein an authenticated transcript thereof is produced to support the action.

As before remarked, the defendant, James T. Waters, executed the warrant of attorney a year after the execution of the bond, authorizing a confession of judgment for the penalty of the bond, in case of breach of the condition, &c. The execution of this warrant of attorney could have been for no other purpose, than to authorize the attorney, to whom it is directed, to confess judgment, in case the first and second instalments of interest were not paid after the second was payable, if it was not paid.

It seems to me, that the court did not err in overruling the demurrer to the bill. This is evident from the fact, that the defendant, Waters, received a letter from the plaintiff dated November 16, 1871, (which he, said J. T. Waters, files with his answer) in which the plaintiff informs him, said Waters, that if the interest is not paid inside of time, he will proceed to collect the principal at once.

With full knowledge on the part of said James T. Waters, that the plaintiff claimed, if the interest was not paid according to the condition of the bond, the whole debt was due, he, Waters, made said power of attorney, by which he authorized a confession of the judgment, which was confirmed as aforesaid; and now he claims, that the court should not enforce said judgment in whole, or in part; 1st, because the judgment is for the penalty of the bond, and not for the principal sum or interest mentioned in the condition of the bond ; and 2d, because by the condition of the bond the principal sum of $5,000.00, with lawful

interest payable half yearly, did not in fact become payable until the 1st day of January, 1875, long after the commencement of this suit.

It is evident to my mind, that both plaintiff and defendant at the date of said warrant of attorney considered, and treated, the condition of said bond according to their understanding as amounting to this, to-wit: that if said Waters failed to pay the interest, according to the stipulations and provisions of the conditions of said bond, then the plaintiff was entitled to demand the principal sum of five thousand dollars. And, with this understanding between the parties, the warrant of attorney was executed in good faith, and judgment was in fact confirmed substantially by the attorney, to whom said power was directed, according to the understanding and direction of the said Waters. And it seems to me, that under the circumstances said confession of judgment was authorized by said Waters; and that it is binding.

The court, in rendering its decree in the cause, decreed the plaintiff the balance due on the $5,000.00, mentioned in the condition of the bond, after deducting the payments, admitted in effect by the plaintiff and shown by the evidence, the defendant in fact not pretending to show, that he was entitled to any other credits—his only objection being, as urged before, that they were not proved by proper evidence.

Ordinarily the *onus* of proving credits and payments is on the party who claims them. The plaintiff seems in this case to have admitted all the credits, that any evidence in the cause tends to prove or establish, and it seems to me, that the court committed no error in decreeing in favor of the plaintiff, against the said Waters, for the residue of said sum of $5,000.00, after deducting the credits, to which defendant was entitled.

But it is claimed by the appellants, that the court erred in rendering a personal decree against said defendant, Waters, for money; first, because it was im-

proper to do so in case of foreign attachment against a non-resident; and second, because the court should not have ascertained, and decided upon, the amount due from said J. T. Waters, without at the same time determining other substantial questions in the cause, touching the property attached, or the question of fraud as to the conveyance of land from said J. T. Waters to his brother, George Waters, in the bill mentioned.

The first proposition, it seems to me, cannot be maintained. In the case of *O'Brien et al.* v. *Stephens et al.*, 11 Gratt. 610, it was decided by the Court of Appeals of Virginia, that when the court has properly taken jurisdiction of a cause against an absent defendant, it must proceed to give relief according to the principles of equity; and if an absent defendant does not appear in the cause, there cannot be a personal decree against him; but the attached effects can alone be subjected. But if he does appear, there may be a personal decree only against him, or there may be both a personal decree and a decree subjecting the attached effects; and if the debtor appears and the attachment has not been sued out or levied, there may still be a personal decree against him; or the plaintiff may, after the debtor's appearance, make the affidavit, sue out an attachment, and have it levied on the effects of the debtor and have them subjected.

At the time this suit was commenced, and since, the law of this State relative to foreign attachments in equity against non-residents was, and is, the same substantially, as to the matters in question in this case, as the law of Virginia, under which the decision aforesaid was rendered in 11 Gratt.; and it seems to me, that the principles decided in that case, so far as they apply to our law, are reasonable and correct. Acts of Legislature of West Virginia of 1871, p. 181. It seems to me, that on the authority of said case reported in 11 Gratt. the court did not err in rendering a personal decree against the defendant, James T. Waters. And further, accord-

ing to the principles decided in said case in 11 Gratt., the court did not commit an error, for which its decree should be reversed, in rendering a personal decree against said Waters without disposing of the attachment, or attached effects, or deciding said question of fraud.

The defendant, James T. Waters, failed to produce evidence to establish his defense set up in his answer in every material respect; but I understand from his answer, that after he purchased the property, for which said bond was given, he occupied the same in the State of New Jersey, and there in said State resided for some time. While I am disposed to abide by, and be governed by, the principles decided in the case of *Mayo* v. *Judah*, 5 Munf. still it seems to me, that the principles of that case can not, and ought not, to be applied to this cause under the circumstances.

Upon the whole it seems to me, that the circuit court did not commit any error in this cause to the prejudice of the appellants, and that the decree appealed from should be affirmed.

But the appellee, Coleman, by his counsel argues, that the appeal should be dismissed, 1st, because no decree whatever against George Waters or affecting his interests has been entered ; and 2d, because he never appeared in the cause below, and being a party only by order of publication and attachment, his remedy to correct any error in the decree, by which he may be aggrieved, is by motion in the circuit court; and until he has resorted to his remedy in that court, he cannot be heard in this Court.

It is true, that George Waters has no right to appeal in this case from the decree rendered in the cause, for the reason that he was proceeded against as a non-resident by publication and never appeared in the cause in the court below ; but this fact cannot affect the appeal as to said James T. Waters—he having appeared in the cause and answered.

For the foregoing reasons the decree of the circuit

court, of the county of Kanawha, rendered in this cause, must be affirmed, with costs in favor of the appellee, William S. Coleman, against the appellant James T. Waters, and damages according to law, and this appeal dismissed as to the appellant George Waters. And this cause is remanded to the circuit court, of the county of Kanawha, for such further proceedings therein to be had, as may be in accordance with the principles settled in the foregoing opinion, and further according to the principles governing courts of equity.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED AND CAUSE REMANDED.