BECKWITH *v.* THOMPSON *et al.*

Decided May 14, 1881.

*(Absent, JOHNSON, J.)

1. A fact necessarily involved in an issue, on which there has been a judgment, is thereby conclusively settled in any suit thereafter between the same parties and their privies.

2. But facts in controversy on the trial of an issue but not necessarily involved in the issue, though ever so important in its determination, are not settled by a judgment on the issue, but are open to controversy in any other suit between the same parties or their privies.

3. A *Caveat*-case rested on the better rights of the caveator to the land surveyed by the caveatee; and the caveatee was entitled to a patent for so much of his survey, as was not by the superior title of the caveator specified in his *caveat* or specification of title, no matter how defective the survey or claim of the caveatee might have appeared as against the title of any other party, or even as against any title of the caveator not thus specified; and therefore a verdict and judgment in a *caveat*-case in favor of the caveator for apportioning the land surveyed by the caveatee must necessarily definitely specify the location of that portion of the land of the caveator, which interferes with the survey of the caveatee, or for which the caveator has the better right.

4. This definite location of this portion of the caveator's land is a conclusive settlement of its exact location in a suit in ejectment brought by the caveator to recover of the privies of the caveatee the land, for which the caveatee had got a patent by virtue of this *caveat*-case. But the verdict and judgment in such a *caveat*-case is not conclusive of the location of a corner of a tract of land adjoining the caveator's land, though it was located on the map, made a part of the verdict, and was so located by the surveyor in order to locate the caveator's land.

---

*Counsel in the case below.

5. But the verdict and judgment in such a caveat-case is not conclusive or any evidence, that the patent issued on the caveatee's survey is a better title than any title of the caveator excepting only the particular title of the caveator, which he had specified in his *caveat* or in his specification of title, except where there was a failure by the caveator to specify his title in the caveat-case.

6. When all the defendants in an action of ejectment plead jointly not guilty, none of them disclaiming title, and the plaintiff on the trial proves his title and right to the possession of the whole land claimed in his declaration but fails to prove, that certain of the defendants were in possession of or claimed title to any interest in any part of the land, a general verdict for the whole land claimed in the declaration against all the defendants is not for this failure of proof by the plaintiff erroneous. ·

7. In an action of ejectment against a single defendant, who pleads not guilty without disclaiming title to any part of the land named in the declaration, the defendant proves at the trial that he is in possession of and claims title to only a definite part of the land, a verdict and judgment for the plaintiff for all the land claimed in the declaration is not erroneous; or if erroneous, it is not an error, by which the defendant is injured, or of which he can complain in the appellate court. See *Carrington* v. *Goddin,* 13 Gratt. 588.

8. In an action of ejectment against several defendants none of them disclaim title to the whole or any part of the land, but all plead jointly not guilty ; at the trial they severally prove a claim of title to several distinct parcels of land within the boundaries of the land named in the declaration, and to which it is proved the plaintiff has a good title. The jury may find a verdict for the plaintiff, specifying each several parcel of land so claimed or held by each defendant severally, and should do so in all cases, when the ends of justice demand that there should be such separate finding. But when all the defendants claim under the same title, though by separate deeds for distinct parcels of land, *and nothing* appears in the case to show, that the defendants can in any *manner suffer* from a failure of the jury to find separately against them, a verdict against all the defendants jointly for the whole land claimed in the declaration is not erroneous.

9. Since chapter 110 of the Acts of 1877 went into effect, the right of the plaintiff in an action of ejectment to recover is not affected or impaired by a conveyance of the legal title to the land in controversy pending the suit to any person, not even when the conveyance is to the defendant.

Writ of error and *supersedeas* to a judgment of the circuit court of the county of Wood, rendered on the 18th day of October, 1878, in an action of ejectment in said court then pending, in which Jonathan B. Beckwith was plaintiff, and William P. Thompson and others were defendants, allowed upon the petition of said defendants.

Hon. A. I. Boreman, as special judge, rendered the judgment complained of.

GREEN, JUDGE, furnishes the following statement of the case:

This is an action of ejectment brought by Jonathan B. Beckwith on September 12, 1871, in the circuit court of Wood county, against Johnson N. Camden, John V. Rathbone, Daniel R. Neal, Wm. T. Poole, William P. Thompson, Wm. N. Chancellor, N. A. Poole, James Hardin, Patrick Welch and John Coonen, to recover a tract of land containing two hundred and twenty-five acres two roods and seventeen poles, set out by metes and bounds in the declaration, situated in said county, at the mouth of the Little Kanawha river, a part of a tract formerly owned by John Stokely. The defendants pleaded jointly "not guilty." On October 8, 1858, the jury found a verdict for the plaintiff, "and that he has right in fee simple to the possession of the premises specified hereinafter, being a part of the premises specified in the declaration, and against the defendants in the declaration mentioned, who were in possession and claimed title thereto at the commencement of this action, which premises are specified and described as follows, to wit: Beginning at a point marked letter C on the map of surveyor Farron, made and filed in this cause, the beginning corner of the James Neal four hundred acre survey and the John Stokely twelve hundred acre survey; thence south twenty-four degrees east (114) one hundred and fourteen poles to the point at letter D on said map; thence south (39) thirty-nine degrees west (243) two hundred and forty-three poles to a point at letter E on said map; thence with the red pen line from said letter E northwest to the Ohio river; thence with the Ohio river and the meanders thereof to the place of beginning at letter C on said map, a copy of which said map marked 'No. 7,' is made part of the verdict."

The defendants moved the court to set aside this verdict and grant them a new trial for the grounds following:

"1st. The court misdirected the jury in giving them the instructions given by the court, and in refusing to give the instructions asked for by the defendants.

" 2d. The verdict is contrary to the evidence in this: That the jury rendered a general verdict against all the defendants, there being no evidence before the jury that the defendants, N. A. Poole, John Coonan, Patrick Welsh or James Hardin were in possession of the said land, or any part thereof, at the time of the institution of said suit or since that time; nor was there any evidence that either of the said named persons, at the time of the institution of said suit or since, claimed any title or interest in said land or any part thereof.

" 3d. And further, in this: there was no evidence to warrant a verdict against the defendants, W. P. Thompson or W. N. Chancellor; the evidence offered by the defendants and not controverted showing, that whilst the defendants, Thompson and Chancellor, had or claimed title to a part of said land prior to the institution of said suit, yet prior to the service of the declaration upon them, they had by their deed of April 2, 1871, offered in evidence in said cause, conveyed their interest in said property to W. T. Poole. And their being no evidence at the time of the service of said declaration on them, or since, that they were in possession of said land or any part thereof, or that they claimed title to said land or any part thereof, said verdict as to the said Thompson and Chancellor was without evidence to sustain it.

" 4th. The verdict is wrong in finding for the plaintiff, that he was entitled to the possession of the two acres of land known as the ' refinery,' he, the said plaintiff, by his deed to W. T. Poole, bearing date the 29th day of March, 1872, having conveyed to said Poole, one of the defendants, all his right, title and interest in and to said two acres of land, the said two acres being in the boundary recovered by the plaintiffs from the defendants. Said conveyances having been made by the plaintiff to the defendant, Poole, since the institution of his suit and before trial, the jury should have found the fact. And as to the said two acres the said plaintiff was not entitled to a recovery, but the defendants should go thereof without day.

" 5th. The verdict of the jury was contrary to law."

The court refused to set aside the verdict, and on October 18, 1878, entered up a judgment for the plaintiff against all the defendants pursuant to this verdict; and the defendants

excepted to this action of the court. All the evidence is set forth in the bill of exceptions taken thereto by the defendants. From this evidence it appears, that the grounds set out as the second and third ground by the defendants for setting aside the verdict as above stated, set forth correctly what appears from said evidence.

The evidence shows, that the James Neal survey of 400 acres, whose beginning corner is by the verdict made the beginning corner of the land recovered in this suit by the plaintiff, Beckwith, was patented to James Neal September 14, 1785. In this patent this tract of four hundred acres is described as "beginning at a sugar-tree standing on the bank of the Ohio and running south twenty-four degrees east one hundred 'and seventeen perches, south thirty-nine degrees west two hundred and forty-three perches," &c.; and the tract is described as "lying on the Little Kanawha at the mouth adjoining said Neal's other land." The evidence further shows, that the plaintiff, Beckwith, got his title to the land claimed by him in the declaration by intermediate conveyances through Samuel Stokeley from John Stokeley, which conveyances gave him said John Stokeley's title to the 235 acres claimed by him, a part of the 1,200 acre survey of John Stokeley, and named in the deed. A patent for this 1,200 acres was granted to John Stokeley on May 9, 1804. This tract is that described in the patent as "a tract containing 1,200 acres, lying and being in the county of Wood, adjoining the Ohio river and lands surveyed for *James Neal*, Wm. McCleary and Hugh Phelps, and bounded as follows: Beginning at a sugar-tree, corner to James Neal's survey, a small distance from the mouth of the Little Kanawha river, and on the bank of the Ohio river, running thence with two of his lines south 24° E. 117 poles to a white oak, S. 39° W. 243 poles to a black oak, corner to Wm. McCleary," &c.

By a comparison of these courses with the courses found by the jury as the boundaries of the plaintiff Beckwith's land and from the surveyor's report it appears, that the plaintiff, Beckwith, owned the eastern end of this twelve hundred acre survey or upper end of it, the Ohio river running there from east to west. The James Neal survey of four hundred acres lying on the Little Kanawha but- bordered

a short distance on the Ohio, the beginning corner of the 1,200 acre survey of John Stokeley, on the Ohio, being the same as that of James Neal's 400 acre survey, and the two first courses of these two surveys correspond ; the Stokeley survey of 1,200 acres calling for the two first courses of the James Neal survey of 400 acres ; after that the two surveys run in opposite directions. The James Neal survey of 400 acres lies eastwardly of these two courses, the dividing line between the two surveys and the Stokeley survey of 1,200 acres lying westwardly and down the Ohio. It would seem then that there could be no land vacant between these two surveys. It is obvious from these patents of John Stokeley for 1,200 acres, and James Neal for 400 acres, and from the maps in this case, that there could be no vacant land on the Ohio a short distance below the mouth of the Little Kanawha, the James Neal survey taking the land just at the mouth of the Little Kanawha on the lower or western side of that stream, and running up that stream on the western and southern side more than half a mile, and the John Stokeley survey of 200 acres adjoining it and running down the Ohio two or three miles, and both of them running back from these streams more than half a mile.

The location of the division line between these two surveys was however not known with certainty. It began at a sugar-tree on the Ohio; but the location of this tree was not known with certainty. It had disappeared. Some said it was at the point "C" on the maps, twenty-two poles below the mouth of the Little Kanawha, and others that it was at the point "H" on the maps, eighty poles below the mouth of the Little Kanawha, or fifty-eight poles lower down the Ohio. Of course if the John Stokeley survey of twelve hundred acres located from this lower point on the Ohio and the James Neal survey from the upper (which they could not properly be, the two surveys adjoining), there would be a parallelogram between the two surveys fifty-eight poles wide.

The evidence in this case shows, that on January 20, 1854, one G. B. Saunders took up this parallelogram as vacant land, and in the survey he made included as vacant not only this parallelogram containing twenty-nine acres one rood and four-

teen square poles, but extended the lines of his survey to the Little Kanawha river, thus including in them seventeen acres two roods and twenty-six square poles of land, which would have been in the limits of the James Neal survey of four hundred acres, even if it had been located from the point only twenty-two poles below the mouth of the Little Kanawha, where some supposed the sugar-tree, its beginning corner, had stood.

Thereupon the plaintiff in this ejectment suit filed his caveat against the issuing of a grant on this forty-seven acre survey of G. B. Saunders, on the ground that he, the said Beckwith, had title thereto under the patent of James Neal for four hundred acres dated September 14, 1785; and in the caveat-case he established, that he had title to twenty-three acres of said four hundred acre survey of James Neal by intermediate conveyances under said Neal; and the jury found what were the boundaries of this twenty-three acres, and that it was covered by the forty-seven acre survey of G. B. Saunders. The sugar-tree, the beginning corner of this four hundred acre survey, was not a corner of this twenty-three acres. It was however located on the map, on which this twenty-three acres of the caveator, Beckwith, was located, by the jury at the upper point on the Ohio river, that is twenty-two poles below the mouth of the Little Kanawha. The surveyor's report in this caveat-case shows, that the caveator, Beckwith, claimed this to be its true location, while the cavatee claimed it was located at the other point on the Ohio river, that is, at a point eighty poles below the mouth of the Little Kanawha.

The cavatee, G. B. Saunders, moved the court to set aside this verdict, but the court refused to do so and entered up a judgment accordingly. "But this judgment," it was declared by the court in it, "was not to prevent the cavatee, Saunders, from obtaining a patent for all the land included in his survey of forty-seven acres, which lies outside of the lands of the caveator, Beckwith, as laid down by surveyor Loomis in his map made and filed in this cause marked on the face thereof No. 3, showing the interference, and showing the courses and distances of the land surveyed by the caveatee, as the same is changed and modified by the withdrawal from his said survey of the land of the caveator, as found by the jury, which plat

and report No. 3 or a copy thereof is to accompany the copy of this judgment as a part of it."

This judgment was rendered November 15, 1859 ; and on the first day of March, 1861, a patent was issued to Daniel R. Neal, assignee G. B. Saunders, for so much of this 47 acre survey of G. B. Saunders, as lay outside of this 23 acres of the plaintiff, Beckwith, according to the verdict and judgment. This patent contained 29 acres, 1 rood and 14 square poles, and consisted almost exclusively of the parallelogram lying between the John Stokeley patent of 1,200 acres, as laid off from the sugar-tree considered as located 80 poles below the mouth of the Little Kanawha, and the patents of James Neal of 400 acres; if laid off from this sugar-tree considered to be only twenty-two poles below the mouth of the Ohio, as it was considered by the jury and court in said verdict and judgment. Of course if the John Stokeley patent of one thousand two hundred acres was laid off from this sugar-tree considered as located, where the jury and court in said caveat-case considered it, twenty-two poles below the mouth of the Little Kanawha, then the patent for this twenty-nine acres, one rood and fourteen poles issued to Daniel R. Neal would lie altogether on this patent of John Stokeley for one thousand two hundred acres and altogether on the two hundred and twenty-five acres, two roods and seventeen poles claimed by the plaintiff, Beckwith, in this ejectment-suit, which was conveyed to the plaintiff, Beckwith, on November 2, 1844, nearly ten years before he filed his said caveat, which was August 21, 1854.

All the defendants, who by the evidence in this ejectment case claimed any title in the ejectment-suit before us, claimed under the said Daniel R. Neal as the patentee of this 29 acres, 1 rood and 14 poles, and are thus privies with G. B. Saunders, the caveatee in said caveat-case, and they insist, that the verdict and judgment in the caveat-case is conclusive, that said Saunders's claim to this 29 acres, 1 rood and 14 poles is superior to any claim of the plaintiff, Beckwith, who was the caveator. He insists, that in the caveat-case it was only determined, that Saunders's claim to this 29 acres, 1 rood and 14 poles was superior to any claim of him, Beckwith, under the James Neal patent of 400 acres ; but that it decided nothing

as to any claim he then had under the John Stokeley patent of 1,200 acres, and it is this claim he is setting up in this ejectment case. But he insists, that the caveat-case did conclusively determine against said Saunders and his privies, the defendants in the ejectment-case, that the beginning corner of the James Neal patent of 400 acres, the sugar-tree, was located 22 poles only below the mouth of the Little Kanawha; and therefore that it determined conclusively against said parties that the beginning corner of John Stokeley's patent, which was the same sugar-tree, was located 22 poles below the mouth of the Little Kanawha, and as a consequence that the plaintiff's land extends up to that point, and covers the whole of this twenty-nine acres, one rood and fourteen poles patented to Daniel R. Neal, and portions of which were now claimed by the defendants in this ejectment-suit.

The circuit court of Wood in the trial of this ejectment-case took these views of the plaintiff to be correct in law, as the instructions given by the court to the jury show. The three first instructions given by the court to the jury were as follows :

" No. 1. The jury are instructed, that the verdict and judgment in the record of the said caveat-case in the circuit court of Wood county, given in evidence by the defendants in this cause, in which the plaintiff in this cause was caveator, and G. B. Saunders, under whom the defendants claim, was caveatee, locating and fixing the sugar-tree called for as the beginning corner of the patent to James Neal for four hundred acres at the point designated by the letter 'A' on the plat of surveyor George Loomis, filed in said caveat-case, are conclusive and binding on the parties to this suit as to the location of said corner and as to the land in controversy between the parties to said caveat-case within the boundaries of the said James Neal patent laid off from said point 'A' as the beginning ; but while said verdict and judgment are conclusive on the parties to this suit as to the location of said corner at the point 'A,' yet further than that they are not conclusive on the rights of the parties herein to any land in controversy in this suit, which lies outside of the said James Neal patent as laid off from said point 'A' as the beginning corner.

" No. 2. The jury are further instructed, that to entitle the

plaintiff to recover in this action, he must show by a prepon-
derance of evidence, that the point ' C ' as laid down on the
map of surveyor Farrow in this cause is the beginning
corner of the John Stokeley patent for one thousand two hun-
dred acres, under which the plaintiff claims, and that the lines on
said map running from 'C' to 'D' and from 'D' to 'E' are the
lines called for in said John Stokeley patent, and in locating
said beginning corner to the said Stokeley patent and said
lines, they are to take into consideration the facts that the said
patent calls for beginning at the sugar-tree, corner to the James
Neal four hundred acres patent, and running thence with two
of his lines, and that said sugar-tree corner is by the verdict
and judgment in the caveat-case, given in evidence by the de-
fendants, conclusively established between the parties to this
suit at the point 'A' on the map of surveyor Loomis filed in
said caveat-case; and unless the plaintiff does show by a pre-
ponderance of evidence, that the said John Stokeley patent of
one thousand two hundred acres does extend to said lines ' C
D' and 'D E,' as laid down on said map, thereby covering the
land included in the patent of the defendant, D. R. Neal, as laid
down on said map, then the jury must find for the defendants.

"No. 3. The jury are further instructed, that before the
plaintiff can recover in this action, he must identify by a
preponderance of testimony the John Stokeley one thousand
two hundred acre survey, and that said survey as included in
the patent of the commonwealth of Virginia to said John
Stokeley covers the land included in the patent of the com-
monwealth of Virginia to D. R. Neal."

To the giving of these instructions in lieu of certain other
instructions, asked by the defendants and rejected by the court,
the defendants excepted.

The point "A" referred to in instruction No. 1, is a point
on the Ohio river twenty-two poles below the mouth of the
Little Kanawha. The point "C" on Farrow's map referred
to in the second instruction is the same as this point "A" on
Loomis's map referred to in the first instruction. The lines
on said map from "C" to "D" and from "D" to "E," referred
to in the second instruction, are the two first courses of the
James Neal patent of four hundred acres, and the John Stoke-
ley patent of twelve hundred acres, they being, as we have

seen, the same. These explanations, with what we have said before, will make these instructions intelligible without copying the maps, which would be impracticable. These instructions were given in lien of· the following instructions asked by the defendants and rejected by the court:

"No. 1. The jury are instructed that if they believe from the evidence, that the sugar-tree called for in the patent of the defendant Neal as his beginning corner stands at the point ' H ' on the map of surveyor Farrow, and if they further believe from the evidence, that the sugar-tree at said point ' H' on said map is the beginning corner of James Neal's four hundred acre survey, as described in the patent of said four hundred acre survey granted by the Commonwealth of Virginia to said James Neal in evidence in this cause, and if· they further believe, that the tract of twenty-three acres conveyed by the said James Neal to John Stokeley, and by the said John Stokeley to Samuel Stokeley, and by the said Samuel Stokeley to plaintiff, J. B. Beckwith, lies outside of the boundary of defendant's (Neal's) survey and patent, then the jury must find for the defendants.

" No. 2. The jury are further instructed, that to entitle the plaintiff to recover in this action, the plaintiff must show by a preponderance of evidence, that the point ' C ' as laid down on the map of surveyor Farrow is the beginning corner of ·the said James Neal's four hundred acre survey, and that the lines on said map running from 'C' to 'D' and 'D' to 'E' are the lines as called for in the John Stokely patent of twelve hundred acres, and unless the plaintiff does show by a preponderance of evidence, that said John Stokely's survey of twelve hundred acres does extend to said lines 'C D' and 'D E' as laid down on said map, thereby covering the land included in the patent of defendant, D. R. Neal, as laid down on said map, then the jury must find for the defendants.

" No. 3. The jury are further instructed, that before the plaintiff can recover in this action, he must identify by preponderance of testimony the John Stokeley twelve hundred acre survey, and that said survey as included in the patent of the Commonwealth of Virginia to said John Stokeley covers the land included in the. patent of the Commonwealth of Virginia to defendant D. R. Neal.

"No. 4. The jury are further instructed, that the defendant, D. R. Neal, having sold and conveyed to defendants, J. N. Camden, J. C. Rathbone and J. V. Rathbone, about eight acres of the land in controversy, and that the said Camden and Rathbone having sold and conveyed to John Cook about two acres of said eight acres, on which the refinery stands known as the Cook refinery and subsequently the Poole refinery, and that the said Cook by two deeds sold and conveyed all his interest in and to said two acres, on which is the said refinery, to the defendant, Wm. T. Poole, and that the said William T. Poole sold and conveyed the one undivided half of said two acres, with the refinery, to J. N. Camden, W. P. Thompson and W. N. Chancellor, partners as J. N. Camden & Co., and that said partners as Camden & Co. sold and re-conveyed said property to W. T. Poole, all of which conveyances were made prior to the institution of this suit, and that since the institution of this suit, to wit, on the 29th day of March, 1872, the plaintiff, J. B. Beckwith, by his deed of that date sold and conveyed all his interest in and to said two acres and the refinery thereon to said William T. Poole, one of the defendants, then said conveyances defeat the action of said plaintiff as to said two acres, and said plaintiff is not entitled to recover said two acres in this action, although the jury might believe from the evidence that the plaintiff is entitled to the residue of the land in controversy, but as to the said two acres the jury must find for the defendant W. T. Poole and the defendants J. N. Camden, W. P. Thompson and W. N. Chancellor, composing the firm of Camden & Co.

"No. 5. The jury was further instructed that the record of the circuit court of Wood county, offered in evidence by the defendants in this cause, in which record the plaintiff in this cause was plaintiff and caveator, and G. B. Saunders was defendant and caveatee, and the defendants in this cause are the assignees and privies of the said G. B. Saunders, is a record between the same parties and their privies as the parties to this suit; that the said record being a record between the same parties and their privies and in relation to the same subject matter, that the judgment of the court rendered in said cause on the verdict therein mentioned, is conclusive evidence between said parties in this suit; and said judgment having found

that the caveatee Saunders, (the assignor of the defendant D. R. Neal) was entitled to a patent for the land in his survey, excluding therefrom the twenty-three acres of which the caveator Beckwith (the plaintiff in this suit) showed the better title, the said judgment is conclusive evidence between the parties to this suit of the better title of the defendant Neal to the land included in his said patent as assignee of said Saunders, and the jury must therefore find for the defendants.

"No. 6. The jury are further instructed, that the plaintiff having caveated the entire forty-seven acres entered by the caveator Saunders, and having at the trial of said caveat only produced title as a part of the land included in said entry, and the jury by their verdict having found a portion of said land in said entry in favor of said caveator, if the jury should believe from the evidence, that at the time of said trial of said caveat the caveator claimed title to the residue of the land included in said entry, which residue is the land in controversy, and failed to produce the same in said trial and have said title passed upon by said jury, the said caveator, the plaintiff in this action, is presumed to have abandoned said title; and this court having entered judgment on the verdict rendered upon the trial of said caveat directing the caveator to file a copy of said judgment in the land office of Virginia as evidence of his right to a patent for the residue of the land in said entry outside of the land found in favor of said caveator, and that the patent of defendant Neal was issued in accordance with said verdict, then the verdict and judgment therein are conclusive evidence of such findings, and the jury must find for the defendant."

The point "H" on Farrow's map referred to in instruction No. 1, is a point on the Ohio river eighty poles below the mouth of the Little Kanawha, where according to some stood the sugar-tree, which was the beginning corner of James Neal's four hundred acre survey, and John Stokeley's twelve hundred acre survey.

The only other instruction given by the court to the jury was instruction No. 4. It was given in lieu of instruction No. 4, as asked by the defendants and refused by the court; and to the giving of the one and the refusing of the other the de-

fendants excepted. The instruction given by the court was as follows:

"No. 4. The jury are further instructed, that if the defendant, D. R. Neal, sold and conveyed to defendants, J. N. Camden, J. C. Rathbone and J. V. Rathbone, about eight acres of the land in controversy, and that the said Camden and the Rathbones sold and conveyed to John Cook about two acres of said eight acres, on which the refinery stands known as the 'Cook Refinery' and subsequently the 'Poole Refinery,' and that the said Cook by two deeds sold and conveyed all his interest in and to said ·two acres, on which is the said refinery, to the defendant, William T. Poole, and that the said William T. Poole sold and conveyed the one undivided half of said two acres with the refinery to J. N. Camden, W. P. Thompson and W. N. Chancellor, partners as Camden & Co., and that said partners, as Camden & Co., sold and reconveyed said property to said W. T. Poole, all of which conveyances were made prior to the institution of this suit, and that since the institution of this suit, to wit: on the 29th day of March, 1872, the plaintiff, J. B. Beckwith, executed and delivered a deed of that date for said two acres, on which said refinery is situated, to said Wm. T. Poole, one of the defendants, and if the jury further believe, that at the same time of the execution and delivery of said deed to said William T. Poole the said William T. Poole and the said J. N. Camden executed and delivered to said J. B. Beckwith a writing under their hands and seals, bearing date on the said 29th day of March, 1872, in the words and figures following, to wit:

"'*Whereas,* There is a suit of ejectment now pending in the circuit court of Wood county, State of West Virginia, in the name of *J. B. Beckwith* v. *D. R. Neal and others,* to recover amongst other lands about two acres of land ·at the mouth of the Little Kanawha river known as "Poole's Refinery," we, or either of us, promise and bind ourselves to pay to said J. B. Beckwith the sum of five hundred dollars, in the event that said suit shall be decided in his favor, and the court shall adjudge possession of said two acres of ground above mentioned to be the property of the said J. B. Beckwith, the said amount to be paid at the final determination of said suit, but it is understood and agreed, that this obligation is to be void

and of no effect, if the said Beckwith shall be defeated in said suit.

"'Witness our hands and seals this 29th day of March, 1872.

"'WM. T. POOLE, [Seal.]

"'J. N. CAMDEN. [Seal.]'

"Then the said deed and writing constitute one transaction and contract, and do not bar or defeat the plaintiff's action if he otherwise shows himself entitled to recover."

The instruction offered by the defendants and refused by the court, in view of which this instruction was given, put the same hypothetical case in the same words down to and including the words, "on which said refinery is situated, to the said Wm. T. Poole, one of the defendants," and omitting all the balance of the instruction given by the court it concluded "Then the said conveyances defeat the action of the said plaintiff as to the said two acres, and the said plaintiff is not entitled to recover said two acres in this action, although the jury might believe from the evidence, that the plaintiff is entitled to the residue of the land in controversy, but as to the said two acres the jury must find for the defendant, Wm. T. Poole, and the defendants, J. N. Camden, W. P. Thompson and W. N. Chancellor, composing the firm of Camden & Co."

In addition to the record in said caveat given in evidence and the maps hereinbefore referred to the other evidence proved clearly, that the plaintiff, J. B. Beckwith, when the suit was instituted, had the legal title of John Stokeley in his patent for said twelve hundred acres to the extent of two hundred and twenty-five acres, two roods and seventeen poles; that it was the eastern end of this John Stokeley survey; and if the beginning corner of this survey, the sugar-tree, was located at a point twenty-two poles below the mouth of the Little Kanawha, then that plaintiff's said land covered all the land in controversy, and his title was better than the title of any of the defendants, all of whom, who claimed any title, claiming under the title of Daniel R. Neal by virtue of his patent of twenty-nine acres, one rood and fourteen poles; but if on the contrary the beginning corner of the John Stokeley twelve hundred acres patent, the sugar-tree, was situated eighty poles below the mouth of the Little Kanawha, then that none of the land claimed or occupied by any of the

defendants was within the boundaries of the plaintiff Beck-with's land.

The evidence also proved all the facts stated hypothetically in the fourth instruction given by the court. The evidence did not show, that when this suit was commenced, the defend-ants, W. P. Thompson and W. N. Chancellor, were in posses-sion of any part of the land in controversy or claimed at that time any title thereto, though they had claimed title to a por-tion of this land, claiming under the patent of Daniel R. Neal, but before the institution of this suit, on April 2, 1871, they had conveyed all their interest to the defendant W. T. Poole. There was no evidence to show, that the defendants, N. A. Poole, John Coonan, Patrick Welsh or James Hardin ever were in possession of or claimed title to any part of the land in controversy.

In our view of the case it is unnecessary to state the evi-dence, which tended to prove the location of the sugar-tree, the beginning corner of the James Neal four hundred acre survey and the John Stokeley twelve hundred acre survey. There was some evidence tending to show, that its true loca-on was twenty-two poles below the mouth of the Little Ka-nawha, and some other tending to show, that it was eighty poles below the mouth of this river.

The defendants obtained a writ of error and *supersedeas* to the judgment of the circuit court. The case was tried in that court by Hon. A. I. Boreman as special judge.

*J. B. Jackson*, for plaintiff in error, cited the following authorities : Code ch. 90 §§ 5, 77, 14, 23 ; Tillingshast's Adm'rs *262, 275, note ; 9 Serg. & R. 26 ; 1 Marsh. (N. S.) 236 ; 1 Vt. 244 ; 3 Vt. 448 ; 9 Com. 661 ; 13 Barb. 526 ; 2 Greenl. Ev. § 304 ; 24 How. 276 ; 15 Cal. 27 ; 18 Cal. 219 ; 2 Johns. 438 ; 1 Greenl. 53 ; 10 W. Va. 250 ; Acts 1877 ch. 100.

*John A. Hutchinson*, for the defendant in error, cited the following authorities : 10 Gratt. 396 ; *Id.* 513 ; 4 Gratt. 235 ; 10 Pick. 250 ; *Id.* 98 ; 5 Pick. 395 ; *Id.* 181 ; 4 Cush. 54 ; 18 Johns. 420 ; 3 Ohio St. 241 ; 20 Ohio St. 478 ; 2 Rep. 74 ; 5 Burr. 2764 ; Vent. 279 ; Co. Litt. 146 b.; Chy. Cas. 716 ;

Vin. Abr. 138 pl. 15; 9 Dana 209; 11 Vt. 221; *Read* v.
*Field*, 15 Vt.; 6 N. H. 401, § 24; 4 Rand. 74; Yeates 292;
2 Rand. 356; 2 Tuck.; Bish. Con. § 577; 10 W. Va. 250; Code
Va. 1849, pp. 483, 467; 46 N. H. 249; 2 Rich. (S. C.) 518; 47
N. Y. 327; 8 Ala. 375; 9 Ala. 24; 4 Scam. 561; 4 Metc. 231;
17 Ill. 168, 169; Runn. Ejectmt. 75; Runn. App. 192;
Rich Pr. (1792) 210; Code ch. 90 §§ 5, 7, 13, 14, 23; 2 Wall.
348; 40 Barb. 89; 4 How. 358; 15 How. 358; 29 Ala. 542;
43 Me. 280; 4 Jones L. 371; 13 Pa. St. 433; 5 W. Va. 214;
5 Ired. 569; 10 N. Y. 280; 36 N. Y; 513; 2 Munf. 453; 9
Serg. & R. 26; 6 Barn. & Cress. 703; 24 How. 268; 10 N.
Y. 280; 3 Rand. 462; 4 Rand. 74; 1 Marsh. 107; 2 Harr.
& J. 182; 1 Harr. & J. 167; 13 Gratt. 587; 9 Dana 452; 7
Watts. 406; 7 Cal. 409; 19 Cal. 28.

GREEN, PRESIDENT, announced the opinion of the Court:

The most important question in this case is: What part
or parts are to be regarded as conclusively determined by the
verdict and judgment in the caveat-case.

As was said in the case of *Corville & Garber* v. *Gilman et al.*,
13 W. Va. 327: "It is thoroughly well settled, that matters
which have been once determined by judicial authority, cannot
be again drawn in controversy by the same parties and privies
in the decision. See *Smith* v. *Whiting*, 11 Mass. 446; *Young* v.
*Black*, 7 Cranch. 567; *Embury* v. *Conner*, 3 Coms. 522; *Sim-
son* v. *Hart*, 14 Johns. 77; *Edwards* v. *Stewart*, 15 Barb. 67;
*Bellinger* v. *Craigue*, 31 Barb. 534.

"All the authorities agree, that if it appears from the record,
that a point in controversy was necessarily decided in the
first suit, it cannot be again considered in any subsequent
suit. *Burke* v. *Miller*, 4 Gray 114; *Whelan* v. *Hill*, 2 Whart.
118; *Marsh* v. *Pier*, 4 Rawle 273; *Rice* v. *King*, 7 Johns. 20;
*Betts* v. *Starr*, 5 Conn. 550; *Aslin* v. *Parkins*, 2 Burr. 666.

" When the record discloses the exact point in controversy,
the rule above laid down is universally admitted; but when
by reason of the generality of the issue it embraces many is-
sues, and it is not possible to determine on what issue the
verdict was rendered, the question, whether the real issue
tried by the jury, and on which their verdict was rendered,

can be proven by parol evidence, has given rise to decisions which are not harmonious.  The weight of authority however as well as reason is, that in such case the issue actually tried by the jury may be proven by parol; and when so proven it is as conclusive as if shown by the record alone. *Doty v. Brown*, 4 Coms. 71; *Washington, Alexandria and Georgetown S. P. Co.* v. *Sickles et al.*, 24 How. 344; *Babcock & Co.* v. *Camp et al.*, 12 Ohio St. 11; *Wood* v. *Jackson*, 8 Wend. 10.  But it is the verdict and judgment on the issue actually made, which is thus conclusive, and while it establishes the right conclusively, it does not establish the facts, on which that right depends, unless they are set forth definitely in the record.  See opinion of the Supreme Court delivered by Justice Catron in *Aspden et al.* v. *Nixon*, 4 How. 499; *Bennett* v. *Holmes*, 1 Dev. & Bat. 486; *Haight* v. *The City of Keokuk*, 4 Clarke (Iowa) 199; *Washington, Alexandria and Georgetown S. P. Co.* v. *Sickles et al*, 24 How. 314; *Hibshman* v. *Dulleban*, 4 Watts 183."

That we may comprehend clearly the law thus stated, we will give from the adjudged cases a few examples of its application.

In *Doty* v. *Brown*, 4 Coms. 71, A. took from B. a bill of sale of certain personal property; and C. afterwards levied on all this personal property by virtue of an attachment in favor of B.'s creditors; and after the levy A. took and converted to his own use *a part of this property*.  C. sued him therefor in a justice's court claiming in his declaration, that A. had taken and converted to his own use the whole of this property.  It was found on the trial before the justice, that A. had only converted a portion of this property, and thereupon the plaintiff, C., stated he only claimed to recover the value of the property, which A. had converted to his own use, and he withdrew any other claim in his declaration.  The defendant recovered $25.00 damages, *the justice adjudging the bill of sale, under which A. claimed the property, fraudulent and void as to creditors*.  The questions controverted in this trial before the justice were proved by parol evidence.  The defendant in this suit, A., then brought an action against the plaintiff in the said court to recover *the residue of the property;* and it was decided, that

the judgment of the justice was in this last suit to be regarded as conclusive upon the question of fraud in the bill of sale which A. had taken from B.

On the contrary in *King* v. *Chase*, 15 N. H. 15, K. sued the sheriff in an action of trover for taking certain oats, which had been conveyed to him by a mortgage. The jury found for the defendant, the sheriff. The plaintiff then afterwards sued the sheriff on an action of trespass for taking certain hay. The defendant, the sheriff, proved by one of the jury in the former case, the action of trover, that the verdict of the jury in the former case was based only on the ground, that the mortgage conveying the oats to King was fraudulent and void. And as the only title the plaintiff in the action of trespass had to the hay (for the taking of which he brought the suit) was the same mortgage that conveyed the oats to the plaintiff, the defendant insisted, that the verdict and judgment in the trover suit was conclusive evidence, that this mortgage was fraudulent and void. The court decided, that it was not only not conclusive evidence but was not even admissible evidence on this point. The decision is based on the ground that the validity or invalidity of this mortgage was not a question directly or indirectly in issue in the trover suit. It was only a fact in controversy in the trial of the former suit before the jury. And what the verdict of the jury and the judgment of the court did conclude in that case were the facts directly or indirectly in issue by the pleadings, and not the facts in controversy before the jury in the trial of the case, even though those facts, if determined in one way, would lead to a conclusion on the facts really in issue by the pleadings directly or indirectly. The reasoning of the court in this last case was cited approvingly by this court in *Coville & Garber* v. *Gilman et al.*, 13 W. Va., 329. The case is not easily reconcilable with the decision in *Doty* v. *Brown*, 4 Coms. 71, unless we can base that decision on the fact, that the justice *adjudged the bill of sale was fraudulent and void* in that case, and in the statement of the case this is not only said but italicised. It may perhaps be said, that there it was a fact expressly adjudged in the judgment rendered in the first case, and therefore a fact directly or indirectly in issue in that case, and if so, it is consistent with the

New Hampshire case, wherein, I think, the true principle is stated.

In *Coville & Garber* v. *Gilman*, 13 W. Va. 314, where A. sued B. in an action of *assumpsit* for damages for the proceeds of an oil-well pumped by B., which proceeds A. claimed were his—the plea was *non assumpsit*. One of the questions in controversy before the jury, as appears from an instruction given them by the court, was, whether B. was not a partner with A. in this oil. If he was, then, as the court instructed the jury, they must find for the defendant as for the balance, which might be due on the settlement of the partnership, and which could not be recovered in an action at law, till such settlement had been made by the parties. The jury found for the plaintiff a certain amount, and judgment was rendered therefor. In a chancery suit brought by B. for a settlement of their alleged partnership in the pumping of this oil extending over a time prior to as well as subsequent to this judgment A. insisted that there never was by this contract any partnership between him and B., and relied on this verdict and judgment as conclusive evidence, that no partnership ever did exist. Following the decision of the New Hampshire case it was decided by this court, that this verdict and judgment was not only not conclusive evidence, but was not even admissible evidence on the question, whether there was or was not a partnership, though it was conclusive evidence, that none of the items of account specified in the bill of particulars and in the offsets filed in the action of assumpsit were items in any partnership account, if any partnership was proven to exist. This court held, that the question of partnership or no partnership was not a question either directly or indirectly involved in the pleadings in the action of assumpsit; and though it was proven, that it was a fact controverted before the jury, yet that such a fact was not concluded by the verdict of the jury. The conclusion reached in that case by this court is sustained by the weight of authorities elsewhere. See *Washington, Alexandria and Georgetown S. P. Co.* v. *Sickles et al.*, 24 How. 344 ; *Aspden et al.* v. *Nixon et al.*, 4 How. 491 ; *Bennett* v. *Holmes*, 1 Dev. & Bat. 486 ; *Haight* v. *The City of Keokuk*, 4 Clarke (Iowa) 199 ; *Shafer* v. *Stonebraker*, 4 Gill. & J. 345 ; *Hibshman* v. *Dulleban*, 4 Watts 183.

In applying the law to the case before us it is necessary for us to enquire, what facts or matters are directly or necessarily involved in the issue between a caveator and a caveatee, for such facts and matters are conclusively settled between the parties and their privies and can not be again controverted in any suit at law or in equity—between such parties and their privies. But such facts and matter, as were not necessarily involved in the issue between such parties, cannot be regarded as adjudicated, though they may have been in controversy before the jury, and though the conclusion reached by the jury on the matters in issue in the case may have been a consequence of the finding of such facts in controversy before them in a particular manner.

In considering this point we should notice four peculiarities in every caveat-case.

1. In every case of caveat the caveat rests upon the ground of the better right in the caveator to the land surveyed by the caveatee. Unless the caveator can show such better right, the caveatee is entitled to the judgment, though it might appear, that as against a third party, who could show a better right, his entry and survey were not valid. See *Walton* v. *Hale*, 9 Gratt. 194. The caveator cannot recover on the ground of the weakness of the title of the caveatee. *Harper* v. *Baugh*, 9 Gratt. 508.

2. The caveator must state in his caveat the grounds, on which he claims this better right to the land in controversy, and he will not be permitted to abandon on the trial the right, which he has set out in his caveat, as that under which he claims, and prove a different right. See *Harper* v. *Baugh*, 9 Gratt. 508. If the caveator fails to state in his caveat the ground, on which he claims to have the better right, he will still be permitted to file a specification of the alleged better right, on which his claim is founded, but this he must do, before the jury is sworn to ascertain the fact ; but if the caveatee does not object to such a failure of the caveator to specify the grounds of his claim, before the jury is sworn, he cannot afterwards object to the caveat on that account. *Clement* v. *Kyle*, 13 Gratt. 468. And therefore if the caveat simply states, that the caveator holds the land by an older and better title, not specifying it, and no specification of his title was filed before

the trial, the caveator could on the trial before the jury prove any older and better title, and therefore the verdict of the jury and judgment of the court in favor of the caveatee for the whole or a part of the land in controversy would necessarily adjudicate in such a case, that for so much of the land, as the jury and court adjudged in favor of the caveatee, he had a better title than any title then held by the caveator. But if the caveator before the trial by the jury specified the particular title, by which he claimed to have a better right, the verdict of the jury and the judgment of the court in favor of the caveatee for the whole or a part of the land in controversy would only adjudicate, that the caveatee's title to the land found in his favor was better than the claim of the caveator under the particular title, which had been specified by him, and it would not adjudicate anything with reference to any claim of the caveator to any part of the land in controvery under any other claim of title, which he then held but did not set out in his specification of his claim, unless the law required him to specify all titles or grounds of his claim, and he might therefore be considered as abandoning all such claims not specified ; and this we will presently see the law did not require.

3. The omission of any one to enter a caveat did not impair or in any way affect any right he might have in law or equity to assert a better right. Code of Va. of 1848, ch. 113, § 24, p. 483. This was not the law prior to 1819 ; and it was often a subject of discussion, whether a party, who had failed to file a caveat, could be relieved by a court of equity. See *Noland* v. *Cromwell*, 4 Munf. 155 ; *Gooseman* v. *Martin*, 4 Munf. 533; *Christian's devisee* v. *Christian and others*, 6 Munf. 534 ; *Lyne* v. *Jackson*, 1 Rand. 114 ; *McClung* v. *Hughes*, 5 Rand. 453 ; *Jackson* v. *McGavoch*, 5 Rand. 509. But this controversy was settled by the revised Code of 1819, p. 329, § 38, which concludes : "The omission of any person, claiming such better right, to avail himself of the remedy by *caveat* hereby given, shall in no case be construed to bar or hinder such person from asserting such better right in any court of law or equity, in the same manner, as if no such remedy by *caveat* had been given him." This was substantially re-enacted in the Code of 1849, as above stated. But even before the passage of this act it was held,

that a party was not bound in the first caveat, which he filed, to set up and specify all claims or grounds for claiming the land, but might set up one only, and after it was determined, set up another and different claim or ground of claim in a second caveat; and the judgment on the first caveat in no manner affected him in setting up his second and different claim in the second caveat.    See *Preston* v. *Harvey*, 3 Call 495, and *Preston* v. *Harvey*, 2 H. & M. 62.    This was done in these cases; and Judge Tucker in the last case says : " The counsel for the appellee contended, that the question now presented had already been decided in the case between the same parties reported in 3 Call 495; and at first I was inclined to suppose it was.    But on reference to the record in that case I find the judgment was, that no grant should issue to T. Preston for that part of the land contained in his inclusive survey, which is included in the said R. Harvey's survey of one hundred and eighty-seven acres, which was the only fact in controversy in that suit.    The title to the residue of the five hundred and ninety acres therefore was not affected by that judgment."

Of course therefore the failure of the caveator to set up all his claims in the caveat is no abandonment of any claim of title he may have, unless he has failed in it to specify any claim of title, when he must be regarded as relying in the caveat on all his claims of title; but if he specifies one claim of title only, we have seen he can rely on no other, and the above case shows, it is no abandonment of any claim of title not specified.    The other point decided in *Preston* v. *Harvey*, 2 H. & M. 63, 64, that as in the first case it was found, that the caveatee's warrant, upon which his last entry was made, had been exhausted, it was conclusive of this same fact in the second case, seems to be inapplicable according to the modern decisions in Virginia, as we have seen, that the fact, that there was this weakness in the caveatee's claim or any other weakness in it, would not justify a verdict for the caveator, and could not now be regarded as in issue in either case.

4. Where the caveator does not show a better title to the whole of the caveatee's survey but only to a part thereof, the jury must fix by metes and bounds that part of the caveator's lands, which is covered by the caveatee's survey, and thus

there is in any such case necessarily involved in the issue between the caveator and caveatee the location of this portion of the caveator's lands; and this location being necessarily involved in the issue between the parties, the determination of this location by the jury and court is necessarily conclusive on the parties, the caveator and caveatee, and their privies in any other suit. This follows as a matter of course from the law's requiring the caveator to recover only on the strength of his title, and entitling the caveator to a judgment and patent for any portion of survey not found by the jury to be covered by the older title of the caveator. What portion of his survey is so covered must of course be designated by the jury in their verdict, and its exact location must be fixed. Therefore this fixing of its location is a fact necessarily involved in the issue, and when done, it is *res adjudicata*, and can never be again controverted in any suit between the parties or their privies.

There is no difficulty in applying this law to the case before us. The caveat of the plaintiff, Beckwith, states, that he had title to the caveatee's, Saunders's, survey by virtue of a patent of the commonwealth and by sundry mesne conveyances, transferred and conveyed to him, Beckwith. Before the trial by the jury he filed a specification of his claim, that he "claimed under the patent of James Neal for four hundred acres dated September 19, 1785, and by sundry mesne conveyances transferred and conveyed to him, Beckwith." He had at that time another claim covering a considerable part of the survey of forty-seven acres of the caveatee, Saunders; but he did not specify this claim. As we have seen, he did not by failing to specify this other claim under a patent of John Stokeley for one thousand two hundred acres abandon it or in any way prejudice himself in setting up this other claim under John Stokeley's survey and patent either in another caveat or by an action of ejectment, after a patent had been issued on the Saunders survey, if it interfered with his claim under the Stokeley survey and patent. All that the verdict and judgment could do, was to prevent him from ever after in any suit setting up any claim under the James Neal patent of four hundred acres dated September 14, 1785. The plaintiff, Beckwith, was therefore not precluded in this ejectment-suit by

the verdict and judgment in the caveat-case from setting up his title to the land in controversy under the John Stokeley patent; and the instruction asked by the defendants, their 6th instruction, that he was precluded from so doing, was properly refused by the circuit court.   The court also properly rejected the 5th instruction asked by the defendants, which in effect said, that said verdict and judgment in the caveat-case was conclusive evidence, that the assignee, D. R. Neal, of the caveatee, Saunders, had a better title to the twenty-nine acres patented to him than the plaintiff, Beckwith, when in truth this verdict and judgment was only conclusive between the parties and their privies, that the said D. R. Neal's patent for this twenty-nine acres was a better title than any title the plaintiff, Beckwith, could set up under the James Neal patent of four hundred acres, which was immaterial in the ejectment suit, as the plaintiff set up no title under the James Neal patent of four hundred acres but only under John Stokeley's patent of one thousand two hundred acres.

From the law above stated it is apparent, that in this caveat-case the locating of the caveator's, Beckwith's, claim under the James Neal survey of four hundred acres was necessarily involved in the issue in this caveat-case, because any portion of the survey of forty-seven acres, that was not upon the caveator's, Beckwith's, claim under this James Neal survey of four hundred acres, the caveatee had a right to obtain a patent for as against this caveat.   This being the case, it was necessarily a part of the issue in this case to locate so much of the plaintiff's, Beckwith's, claim to the twenty-three acres under this James Neal patent, as was covered by the survey of forty-seven acres of the caveatee, Saunders.   Therefore the location of so much of this twenty-three acres of Beckwith, as was covered by this forty-seven acre survey of Saunders, was necessarily made by the jury a part of the issue in the caveat-case, and when made and approved by the judgment of the court, like any other matter necessarily involved in an issue, it was conclusively and finally settled between the parties and their privies, and the defendants in this ejectment-suit are all privies of Saunders, all claiming, who claim at all, under the patent to D. R. Neal, who was the assignee of Saun-

ders. Now nearly the whole of the first course and distance
both of the James Neal patent for four hundred acres and of
the John Stokeley patent for one thousand two hundred acres,
which are the same, constituted a course and distance in the
caveator's twenty-three acres, a part of the James Neal sur-
vey, which the jury was called upon to locate in this caveat-
case, and which was located by their verdict and by the map
filed with it as a part of the verdict. And the court in this
ejectment-case could properly have instructed the jury, that
this location of the greater part of the first course and dis-
tance of the James Neal patent of four hundred acres and of
the John Stokeley patent of one thousand two hundred acres
were conclusive and binding on the parties in the ejectment-
suit, the defendants being privies of the caveatee, Saunders.

This was the substance of the first instruction given by the
court to the jury, which was, that " the verdict and judgment
in the caveat-case are conclusive and binding on the parties
to this suit as to the location of the land in controversy be-
tween the parties to said caveat-case within the boundaries of
the James Neal patent." The court, it is true, further added :
" And also as to the location of the sugar-tree, the beginning
corner of the patent of James Neal for four hundred acres, at
the point designated by the letter 'A' on the map filed in the
caveat-case." Now I do not understand, that this sugar-tree was
a corner to the twenty-three acres of Beckwith located on said
map. But his corner was in this first line running from this
sugar-tree on the Ohio river and not far from it ; and it ran
with this first line of the James Neal patent nearly its whole
length. So that the location of this line being fixed by the
jury, and the sugar-tree being at the end of this line on the
Ohio river, there was no material error prejudicial to the de-
fendants in the instruction to the jury, that the location of
this sugar-tree corner was conclusively fixed by the verdict
and judgment. Had there been any controversy as to the
part of this line fixed by the jury in its location, when the
sugar-tree corner has to be found, then it might upon the
principles laid down in *Coville & Garber* v. *Gilman,* 13 W. Va.
314, have been an error in the court to instruct the jury, that
the location of this sugar-tree on said map was conclusive. But
it being admitted that the sugar-tree corner is at the end of

the line conclusively located by the verdict of the jury, and where this line strikes the Ohio river, no possible prejudice can result to the defendants from this instruction being given in the form it was given by the court.

To make myself fully comprehended, there are points on this map filed with the verdict of the jury, which are fixed by the map and survey, some of which are half a mile from any part of the land there in controversy, points which were used in ascertaining where the caveator's land was. Now these points though located on this map are not conclusively located by the verdict and judgment in that case, because their location was not necessarily included in the issue joined, but were rather included in the controversies about facts in the trial of the case. But there was no error injurious to the defendants in the court's instructing the jury, that this sugar-tree corner on the Ohio river was conclusively fixed by the verdict of the jury; for the line leading to it being conclusively fixed, and it being on the Ohio river, no injury could result, as really it would be impossible from these fixed data to locate it anywhere except at the point, at which the court instructed the jury it was conclusively fixed. In fact the only question, in which the defendants in the ejectment-suit were interested, was the location of this first corner of the James Neal survey, it being that of the first corner of the plaintiff's, Beckwith's, line under the John Stokeley survey; and this was conclusively fixed, as we have seen, against them by the verdict and judgment in the caveat-case.

The second and third instruction given by the court are but necessary consequences of the first; and the court did not err to the prejudice of the defendants in granting any of these instructions.

The first instruction asked for by the defendants was properly rejected. It is based on the assumption that the jury might find facts inconsistent with those conclusively found by the jury and court in the circuit court, and should therefore not have been given. The second instruction asked for by the defendants is liable to the same objection. It treats as an open question to be decided by the jury, what was the location of the first line of the James Neal patent of four hun-

dred acres, whenever that had been conclusively determined in the caveat-case.

The third instruction asked by the defendants was really granted by the court, as it is the same as the third instruction granted by the court.

The fifth and sixth instructions asked by the defendants were properly refused by the court, as we have before shown.

The only remaining instruction asked for by the defendants was the fourth instruction. The material portion of this instruction, so far as it will now be considered, is, that "if the jury find from the evidence, that the defendant, William T. Poole, had by intermediate conveyances from the patentee, D. R. Neal, his title to two acres of the land in controversy, known as the Poole refinery, when this suit was instituted, and that since the institution of this suit, to wit: on the 29th day of March, 1872, the plaintiff, J. B. Beckwith, by his deed of that date sold and conveyed all his interest in and to said two acres and the refinery thereon to said William T. Poole, one of the defendants, the said conveyance defeats the action of the said plaintiff as to said two acres, and the said plaintiff is not entitled to recover said two acres in this action, though the jury might believe from the evidence, that the plaintiff is entitled to the residue of the land in controversy."

It was a universal rule in all suits except in actions of ejectment, so far as I remember, whether the suits were at common law or in equity, " that the right of the plaintiff to recover in the action would not be affected or impaired by reason of any conveyance or transfer of the subject-matter of the suit by either party to another pending the action." But an exception was made to this otherwise universal rule in the action of ejectment, and if pending the suit the land in controversy was conveyed by the plaintiff, he thereby defeated his action. It was in effect so held by this Court in *Johnston* v. *Griswold & Rogers*, 8 W. Va. 243. But after this decision and, I presume, because thereof, on February 28, 1877, the Legislature amended section 28 of chapter 90 of our Code by adding to it as follows: " But the right of the plaintiff to recover in the action " (ejectment) "shall not be affected or impaired by reason of any conveyance or transfer of the legal title to the premises in controversy by or from the plaintiff to

another, pending the action. And when any such conveyance or transfer is made, the person, in whom the legal title to said premises is thereby vested, may at any time before trial on motion of either party be made a party plaintiff in the action either with or without an amendment to the declaration, as the court may deem proper, and in such case if the plaintiff recover, the verdict and judgment may be for all the plaintiffs or for such of them as may be entitled to the possession of the premises at the time of the trial." This law went into effect ninety days after its passage. See Acts of 1877, chapter 110, page 161.

The object and effect apparently of the first paragraph of this amendment above quoted was, when the plaintiff transferred or conveyed the subject-matter of the suit pending the suit, that such transfer or conveyance should have no operation or effect in the suit, thus placing the action of ejectment in this respect on the exact footing of any other common law suit. If for instance an action of detinue was brought, and pending the suit the plaintiff was to transfer or sell the subject-matter of the suit or his rights therein either to a stranger or to the defendant himself, such sale or transfer could not be proven in the trial, because it could not in any manner affect the pending suit.

This rule seemed to be necessary to the ends of justice, as neither party, plaintiff or defendant, should be permitted to thwart the court and deprive it of its jurisdiction by transfers made *pendente lite*, and this first paragraph appears to have been intended to apply the same rule to actions of ejectment. It says expressly that *no conveyance or transfer made by the plaintiff to another* shall affect or impair his right to recover. That language is broad enough to include a conveyance to the defendant. And when we consider the universal rule of law in all other cases, that the jurisdiction of the courts could not be taken away or affected by any *lis pendens* transaction, we conclude that this first paragraph meant what it says literally, that no conveyance of the plaintiff made *pendente lite* can affect his right of recovering, not even when the conveyance is to the defendant himself. It might be supposed that the second paragraph of this amendment above quoted limited the operation of the amendment to cases, where the plaintiff con-

veyed the premises to a third person, that is, to some one who on motion could be made a plaintiff in the suit, and as the defendant could not be ever made such plaintiff, that when the conveyance is made to him, the amendment should be interpreted as inapplicable. This is certainly true as to the second or last paragraph of this amendment; but I do not see why the first paragraph should be so modified. Its apparent meaning is to exclude all cases of transfer by the plaintiff of the subject of the suit; and in so doing it only put the action of ejectment on the same footing as other suits. The second paragraph simply adds to this a special privilege given either party in an action of ejectment, to make the grantee of the plaintiff a party plaintiff in the suit, provided it is done before the trial of the case.

This case was tried in October, 1878, more than a year after this law went into effect; and under this law the deed made by the plaintiff to the defendant, W. T. Poole, could in no manner affect or impair the plaintiff's right of recovery; and the court ought not to have permitted it to be read in evidence to the jury; and of course the court did not err in rejecting so much of this fourth instruction of the defendant, as we have stated above.

The other point presented in this fourth instruction is more clearly presented in some of the reasons alleged by the defendants, why the verdict of the jury should be set aside and a new trial awarded them. The reasons referred to are the second, third and fourth of them as hereinbefore stated. They are, that certain of the defendants were not by the evidence shown to be in the possession of any portion of the land claimed by the plaintiff in his declaration, nor was there any evidence showing that they ever claimed any title to any portion of this land, and as to certain other defendants, while the evidence showed, that they had at a time prior to the commencement of the suit claimed title to a portion of this land, yet prior to the institution of the suit they had conveyed all their interest in said land to another defendant, and were not in possession of any portion of said land, when the suit was commenced; and the last was that set forth in the defendant's instruction and already discussed.

The practice in England varied as to the necessity of the

plaintiff's proving, that a defendant, who pleaded not guilty, was in possession of the land at the commencement of an action of ejectment. The most usual practice was to require the plaintiff to prove, that such defendant was in possession of the land in controversy, when the suit was commenced. But the court of King's Bench at the Michaelmas term, 1820, by a rule declared, that the practice of requiring the plaintiff, before he could recover, to prove that the defendant, who had pleaded not guilty, was in possession, when the suit commenced, was improper; and therefore it was abolished in that court. And they entered a formal rule to that effect. This rule is to be found in 4 Barnwell & Alderson page 196, and is as follows:

## "Michaelmas Term, 1820.

"*Whereas,* By the common consent-rule in actions of ejectment the defendant is required to confess lease, entry, and ouster, and insist upon his title only; and whereas in many instances of late years defendants in ejectment have put in the plaintiff, after the title of the lessor has been established, to give evidence that such defendant was in possession (at the time the ejectment was brought) of the premises mentioned in the ejectment, and for want of such proof have caused the plaintiff to be nonsuited; and whereas such practice is contrary to the true intent and meaning of such consent-rule, and of the provision therein contained for defendants insisting on title only; it is therefore ordered, that henceforth in every action of ejectment the defendant shall specify in the consent-rule, for what premises he intends to defend, and shall consent in said rule to confess upon the trial, that the defendant (if he defends as tenant, or in case he defends as landlord, that his tenant) was at the time of the service of the declaration in possession of such premises; and if upon the trial the defendant shall not confess such possession as well as lease, entry, and ouster, whereby the plaintiff shall not be able further to prosecute his suit against the said defendant, then no costs shall be allowed for not further prosecuting the same, but the said defendant shall pay costs to the plaintiff, in that case to be taxed."

In the United States some of the State courts followed the practice of the Court of King's Bench and did not require

the plaintiff, in order to recover, to prove in an action of eject-
ment, that the defendant at the commencement of the suit was
in the possession of the premises.   Others followed the prac-
tice of the court of common pleas and required the plaintiff,
before he could recover, to prove, that when the suit com-
menced, the defendant was in possession of the premises.   And
this diversity in the practice in different States has continued
since the passage by them of various statutes abolishing fic-
tions in the action of ejectment and the consent-rule.   See
*Cooper* v. *Smith,* 9 Serg. & R. 26 ; *Pope* v. *Pendergraft,* 1
A. K. Marsh. (Ky.) 122 ;   *Eastin* v. *Rucker,* 1. J. J. Marsh.
236 ; *Cooley* v. *Penfield,* 1 Vt. 244 ; *Stevens* v. *Griffith,* 3
Vt. 448 ; *Vanhorn* v. *Everson,* 13 Barb. 526 ; *Whittington*
v. *Christian,* 2 Rand. 356 ; *Mooberry* v. *Marye,* 2 Munf. 453 ;
*King* v. *Kent,* 29 Ala. 542 ; *Ulsh* v. *Strode,* 13 Pa. St. 433 ;
*Perkins* v. *Rait,* 43 Me. 280 ; *Atwell* v. *McLure,* 4 Jones L.
(N. C.) 371.

In this State of the law the revisal in Virginia in 1849 was
passed, of which the 14th section of chapter 135 on ejectment
was under the heading :   "What must be proved at the trial."
"The consent-rule heretofore used is abolished.   The plain-
tiff need not prove an actual entry on, or possession of the
premises demanded, or receipt of any profits thereof, nor any
lease, entry or ouster, except as hereinafter provided" (refer-
ring to suits against tenants in common).   "But it shall be suf-
ficient for him to show a right to the possession of the prem-
ises at the time of the commencement of the suit."   This is
now the 14th section of chapter 90 of the Code of West Vir-
ginia ; and it has remained unaltered since 1850.

It seems to me, that when our Code declares, that to entitle
the plaintiff to recover "it shall be sufficient for him to  show
a right to the possession of the premises at the time of the
commencement of the suit," it would be unreasonable for us
to hold, that this should not be sufficient, but that in addition
thereto he must show, that the defendant was in possession
of the premises or exercising acts of ownership or claiming
title thereto or some interest therein at the commencement of
the suit.   Especially would it be wrong so to hold, when, as
we have seen, highly respectable courts did not require this
proof even before the passage of the Code and the adoption of
this provision, and so long ago as 1820 the Court of King's

Bench in England declared this practice of requiring this additional proof of the plaintiff was unjust to him and ought not to be followed. If this additional proof not mentioned in our statute was required of the plaintiff, before he could recover, it would operate more especially a hardship on the plaintiff now, as under our Code he may sue any one claiming title to the land. See *Harvey* v. *Tyler*, 2 Wall. 348; *Carter* v. *Hunt*, 40 Barb. 89–93.

The defendant may well claim some interest in the land or title to it, and yet it may be difficult for the plaintiff to prove such claim. By adopting the rule laid down, as I conceive, by the statute and not requiring the plaintiff on the trial to prove anything but " his right to the possession of the premises at the time of the commencement of the suit" no hardship is really imposed on the defendant. For if he be not in the possession of the land, is exercising no acts of ownership on it, claims no title to it or interest in it, he cannot possibly be injured by a verdict and judgment in favor of the plaintiff except by the judgment against him for costs. And he can avoid all the costs as well as the trouble of the trial by simply entering his disclaimer of all claim to that land. If he fails to do so, and puts himself to the trouble and expense of a trial before a jury on a plea of not guilty, it is but reasonable to conclude, that he really claims some interest in the land, as he would hardly give himself such trouble and expense, if he neither had nor claimed any interest in the land, when he could avoid it all by so simple a means.

The next enquiry is : If the evidence showed, that W. T. Poole, one of the defendants, claimed title to but two acres of the land demanded by the plaintiff and was in possession of no other part of it, which it did not do clearly, can he complain, that the verdict of the jury was against him and the other defendants jointly for the whole land? Much that is said above is strictly applicable to such a case. While certainly the jury could under the law have rendered a verdict against him for so much of the land, as he claimed and occupied, and which he might, if he chose, by disclaiming all interest in any portion of the land except that occupied by him, defining it in his disclaimer, have compelled the finding of such a verdict, yet if he has not chosen so to do, it is difficult

to see in this case, how he is injured by the verdict against him for all the land instead of for two acres only of it, if he really claimed no interest in the residue of the land. He chose to put in a joint plea with the other defendants of "not guilty" instead of disclaiming any title to any part of the land except the two acres and putting in his separate plea as to that, and in this case the propriety of putting in such general plea of not guilty by all the defendants was obvious and a saving of trouble and expense, as all of the defendants claimed under the same title, so far as any title is shown by them. If the verdict had been against W. T. Poole for this two acres of ground, which alone he by his counsel says he claimed title to, there would have been a judgment against him for the costs, and they would have been certainly as much as they now are, and if this is required, they would indeed have been more, for it would indeed have been necessary to survey the two acres claimed by him, in order that they might be specified in the verdict, which would have increased the costs, as this surveying of it was not done, it being regarded as unnecessary.

There is, it is true, a diversity of practice in the different States. But we are not called upon to examine these conflicting authorities, as under our Code it has been authoritatively decided, that a verdict and judgment for the whole land in such a case may be rendered, and the defendants cannot complain thereof. See *Carrington* v. *Goddin*, 13 Gratt. 588. This case was decided in 1857, under the Code of 1849, which is, so far as it bears on this question, the same as our Code. The syllabus of that decision No. 4 is: "In an action of ejectment the tenant without disclaiming title to any part of the land in the declaration proves upon the trial, that he is only in possession and claiming title to a part of it, a verdict and judgment in favor of the plaintiff for all the land claimed is not erroneous; or if it is, it is not an error by which the tenant is injured, or of which he can complain in an Appellate Court." It is true there was but one defendant in that case, but the reasoning, on which the decision was based, is applicable to this case, in which there was a joint verdict and judgment for the whole land claimed by the plaintiff against all the defendants, who, so far as any claim appeared, all claimed under one title, though one claimed a several parcel of land.

This defendant could in no manner be injured by such a verdict and judgment. A separate judgment against him for the separate parcel of land claimed by him would have justified a judgment against him and the other defendants, against whom there was a verdict for costs of the suit, and his position would have been just the same, that it now is, if in fact he had no claim to the residue of the land.

It is well said in *Smith* v. *Shackleford*, 9 Dana 454, (s. p. 305) : "The practice of suing several tenants in the same action of ejectment is generally prevalent in this country, and when the question is substantially the same, the opposite practice would be oppressive and has been discountenanced. The practice of delivering a new declaration, after the defendant has been admitted, has fallen into disuse here, and that might not be the mode of separate proceeding, which should now be adopted, when the defendants make a timely application for that purpose. The courts doubtless possess the power of so moulding the proceeding in this respect, as to secure the ends of justice in such cases in the least burdensome manner. But this end would not be promoted by permitting the defendants, after they had gone three times into a joint trial and passed through a tedious investigation without asking for a separate proceeding, to set aside a verdict against them, on the ground that it appeared ,on the trial, that they held in severalty separate parcels of the plaintiff's land."

The mode, by which in such a case a separate judgment can be rendered against each defendant, though they all plead jointly, where in the judgment of the court the ends of justice would thereby be promoted, is distinctly pointed out by our Code ch. 90, §§ 17 and 18, p. 520. Section 17 provides, that if the possession of all the defendants proven be joint, then the verdict *shall* be joint against them all, whether they plead severally or jointly. And section 18 provides, that if on the trial it appears, that any of the defendants occupy distinct parcels in severalty, the plaintiff may recover several judgments against them for the parcel so held by one or more of the defendants separately from others. The note by the revisors of, the Code of 1849 to this section is : "The corresponding section of the New York statute, p. 307, § 29 provides in the contingency stated, that the plaintiff shall

elect, against which defendant or defendants he will proceed. We do not see any good reason for this. After the plaintiff has brought and matured suit against all the defendants, and established his right to recover the whole premises, there does not seem to be any necessity for compelling him to relinquish his title to a part of his property, or compel him to bring a new suit for it. It is said in *Stuart's heirs* v. *Coalter*, 4 Rand. 85, 'that the plaintiff might have sued in one ejectment all persons in possession of any part of the land he claimed.' This does not seem to have been decided by the court. Vide *Camden* v. *Haskill*, 3 Rand. 462. The act in the Revised Code p. 493, § 21 provides how judgment may be entered for costs in case one of several defendants in ejectment be acquitted."

Observe the difference in the language of these sections. If the possession of the defendants be joint, then § 16 provides there *shall* be a joint verdict and of course there *shall* be a joint judgment. But if their possessions be several, § 17 provides that the plaintiff *may* recover several judgments, and of course *may* have a verdict against each defendant for the several parcel held by him. But there is nothing in this last section as there was in the former requiring the verdict to be against each defendant for the several parcel of land held or claimed by him. If the ends of justice require it, the court may, I should think, under this seventeenth section direct the jury to find against each several defendant the land claimed by him in severalty, if the plaintiff should be held to have proved his title. But I do not see, that the court is bound to give such a direction, unless the ends of justice would thereby be promoted ; and in the case before us I do not see what end of justice would have been promoted by such a direction to the jury. If the ends of justice are promoted by a verdict in that form, I do not see what right the defendants have to complain in the appellate court of a verdict within the power of the jury to render, and by which they are in no manner injured. From these considerations we conclude, that the court did not err in refusing to grant any part of the plaintiff's fourth instruction, or to set aside the verdict and grant a new trial, because the verdict was rendered against all the defendants jointly.

The court modified the defendants' fourth instruction by in-

structing the jury, that if the plaintiff was otherwise entitled to recover, he was not barred by reason of his deed to one of the defendants conveying the land in controversy, which that defendant claimed, if the jury found, that the defendant, at the same time that he received this deed, executed a certain paper, which the court seems to have construed as suspending and defeating the operation of the deed, this paper and deed being regarded as a part of the same transaction.   It is not necessary to decide, whether the effect of this paper was such, as the court understood it to be.   It was doubtless to be considered as a part and parcel of the same transaction, but whether it had the effect, which the court attached to it, or not is entirely immaterial; for without it, we have seen, this deed would have had no effect in impairing the plaintiff's right to recover in this action.   The giving of this modified instruction number four could not have been by possibility prejudicial to the defendants, and they cannot complain thereof.   The same is obviously true of the action of the court permitting this paper to go in evidence to the jury.

We conclude therefore, that the court below did not err in refusing any of the defendants' instructions, nor did it err to the prejudice of the defendants in modifying their instructions and granting them in the form in which they were granted.

We have considered every error alleged by the petitioner in his application for a writ of error except the general one, that the verdict of the jury was contrary to the law and the evidence, and we have found it was in accordance with the law, if sustained by the evidence.   And if the jury gave, as we do, the conclusive effect to the verdict and judgment in the caveat-case, which we have indicated, they could not possibly have rendered any other than a verdict for the plaintiff for all the lands claimed by any of the defendants.

I am therefore of opinion, that the judgment of the circuit court of Wood, rendered on the 18th day of October, 1878, must be affirmed, and the defendant in error must recover of the plaintiff in error his costs in this court, expended in this case and $30.00 damages.

JUDGES HAYMOND AND MOORE CONCURRED.

JUDGMENT AFFIRMED.